# Staunton.

## The Douglas Land Co. & Another v. T. W. Thayer Co.

September 12, 1907.

1. BOUNDARIES—*Evidence—Older Patents to Third Persons—Common Designation of Adjacent Tracts.*—The lines of older patents to third persons, which are referred to in a deed of partition betweeen the heirs of an adjácent owner, are relevant evidence to sustain the theory of one of the parties as to the true line between them; and where the patents and deeds in the line of title of the land partitioned refer interchangeably to two tracts in part adjacent to the lands in controversy as the H. and F. land, evidence is admissible to prove that both tracts were sometimes called the H. land.

2. BOUNDARIES—*Corner of Adjacent Tract—Statements Acted On.*—Where it becomes important to establish the location of a corner of tract of a third person in part adjacent to the lands in controversy, which corner is in the controverted line, the fact that the owner of said tract points out his corner to an agent of one of the parties, who is seeking to establish the true line between the lands in controversy, and that he adopts it and marks it, is relevant evidence when offered against such party, as tending to show the true location of said corner.

3. BOUNDARIES—*Evidence—Surveyor—Reason of Running Line.*—A surveyor who has run a disputed line may, by way of inducement to show why he ran it as he did, testify that it was by direction of counsel of one of the parties given in the presence of the counsel and general manager of the other, who stated that he could "go ahead and run it."

4. BOUNDARIES—*Evidence—Deeds Under Which Parties Claim.*—Where land has been partitioned between two heirs of the former owner, and a part of that assigned to one of the heirs has, through successive conveyances, come to A., and his deed calls for the dividing line between the heir under whom he claims and the other heir as the western boundary of A.'s tract, in a controversy between A. and those claiming under the other heir as to the location of said dividing line, the deed to A. is relevant evidence, as tending to show

that ·those under whom A. holds claimed the location of said dividing line to be the same as now asserted by A.

5. BOUNDARIES—*Evidence—Former Surveys.*—In a controversy over a boundary line, it is admissible to prove that an agent of one of the parties stated that his principal had twice run one of the lines of the tract. It is relevant to show acts done by the party in his effort to locate the lines.

6. EVIDENCE—*Admissibility—Objection by Party who has Proved Same Facts.*—An objection to the admissibility of evidence is unavailable to one who has himself elicited the same facts in the cause.

7. BOUNDARIES—*Evidence—Identical Lines of Junior Patent—Newly-Marked Trees.*—Where the lines and corners of a senior patent have become uncertain, a junior patent, calling for these lines and corners, is admissible, and evidence showing the lines of such junior patent may be received for the purpose of identifying the older lines, and also for the purpose of explaining the presence of newly-marked trees in the older lines.

8. EVIDENCE—*Experts—Opinions Rejected in this case.*—Questions propounded to a surveyor on the witness stand for the purpose of eliciting his opinion as to whether the matter in controversy might not be settled by the location of a designated line, or whether a given marked line is a true line, do not come within the scope of expert testimony, and cannot be asked.

9. EVIDENCE—*Excluding Answer of Witness—Anticipated Answer.*—An exception to the action of a trial court in refusing to permit a witness to answer a question will not be considered by this court, if the bill of exception is silent as to what answer was expected to be elicited.

10. EVIDENCE—*Survivor of Transaction—Death of Agent—Testimony of Third Person.*—The death of the agent of one party will not exclude a third person from testifying as to a conversation with such agent in his lifetime, if the conversation is otherwise competent evidence.

11. REAL PROPERTY—*Parol Disclaimer of Title.*—The acquiescence of the agent of one party in the directions given to a surveyor by counsel of the other party as to the running of a disputed line, is not a parol disclaimer of title of his principal, and the fact of such acquiescence may be shown in evidence.

12. BOUNDARIES—*Evidence—Reputed Corners—Opinion of Witness.*—Parol evidence may be received to prove by general reputation and tradition the location of a corner of a patent more than a hundred years old, but a living witness may not give his individual opinion as to the location of such corner.

Statement.

13. Evidence—*Objection to Admissibility—When Too Late.*—An objection to reputation evidence of the location of a corner will not be sustained where similar evidence has already been introduced without objection.

14. Boundaries—*Natural Monuments—Identification—Location of Calls.*—In a controversy over the location of the dividing line between two parcels of land received in the partition of the lands of a common ancestor, where a call in the deed of partition is for a natural monument, witnesses may testify as to the location of the monument and the traditional derivation of its name, in order to identify the monument and locate the call in the partition deed.

15. Boundaries—*Evidence—Leases.*—In a controversy concerning the boundaries of land, leases not shown to cover any of the land in controversy, or to be otherwise relevant, are not admissible in evidence.

16. Evidence—*Objection to Question—Ignorance of Witness on the Subject.*—An exception to the action of the court in excluding a question propounded to a witness, is immaterial where it appears from the answer of the witness that he has no knowledge on the subject.

17. Evidence—*Motion to Strike Out—Specifications of Objections.*—A motion to strike out the testimony of a witness on a particular subject, which has been received without objection, is properly rejected if the party moving fails to point out the specific answer objected to.

18. Boundaries—*Instructions to Jury.*—In a controversy concerning the dividing line between two parcels of land, both of which had belonged to one person and been divided by commissioners between his heirs, an instruction which ignores the theory of defendants that the parties had acquiesced in the line for which they contended, and, without qualification, yields precedence to the supposed intention of the commissioners, without regard to what they may have done in establishing the line in controversy, is erroneous.

19. Instructions—*Partial View of Evidence.*—An instruction must not call special attention to a part only of the evidence and the fact which it tends to prove, and disregard other evidence relevant to the matter in issue.

Error to a judgment of the Circuit Court of Washington county in an action of trespass on the case to recover damages for trespassing on plaintiff's land and cutting trees thereon. Judgment for the plaintiff for $1,750. Defendants assign error.

*Reversed.*

The opinion states the case.

*Daniel Trigg, Fulkerson, Page & Hurt* and *J. C. Padgett,* for the plaintiffs in error.

*White & Penn,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

This case involves the location of the true dividing line between the lands of Mrs. Monroe and George Douglas, Jr., (predecessors in title respectively of the defendant in error, the T. W. Thayer Company, plaintiff in the lower court, and the defendant, the Douglas Land Company, the plaintiff in error), both of whom derived title from a common source—their father, George Douglas—as established by the commissioners and confirmed by the Circuit Court of Washington county in the suit to partition the lands of George Douglas, deceased, amongst his heirs.

The plaintiff brought 'an action of trespass on the case against the defendant and its lessee, the Laurel River Lumber Company, to recover damages for the alleged cutting and removing of timber from its premises, and to a judgment against the defendants this writ of error was allowed.

The lands which were the subject of partition consisted of three tracts, one containing 62,800 acres, another 10,712 acres, and the third 13,655 acres. The first two tracts, which embrace the land in controversy, were patented to James Heron, December 14, 1795. The three tracts were divided into four parcels. The eastern portion of the largest tract was allotted to William Douglas; the central portion to Mrs. Cruger; and the western to Mrs. Monroe, while the two smaller tracts were allotted to George Douglas, Jr. The partition was confirmed in 1846, and carried into deeds in severalty by a special commissioner appointed by the court for that purpose. The deed to Mrs. Mon-

roe calls for the northwest and southwest corners of the 62,800 acre tract, and also for the eastern lines of two older patents, Hunt's and Furman's. The calls in the deed to George Douglas, Jr., are for the northeast corner of the Hunt patent and Mrs. Monroe's western division line. The disputed lines are from "M" to "C" (contended for by the plaintiff), and from "O" to "5," and thence to the end of the dotted line (claimed by the defendants), as shown on the "Buchanan Map," a copy of which is filed with this opinion.

The action of the court in admitting in evidence the Hunt and Furman patents, constitutes the first ground of exception.

As remarked, the lines of these patents are called for in the partition deeds, and they are, therefore, relevant evidence to sustain the theory of the plaintiff as to the true line between the claimants. The land included in the Furman patent adjoins the Hunt patent on the south, and the eastern boundary lines of the two patents are coincident, and, according to the claim of the plaintiff, constitute in part the western line of the 62,800 acre patent. The patents and deeds in the line of the Douglas title refer to the Hunt land and Furman land interchangeably as the Hunt and Furman land, and evidence was admissible to prove that both tracts were sometimes called the Hunt land.

The next exception is to the admission of the testimony of the surveyor, Buchanan, that the Debusks, who owned part of the Hunt land adjoining the Douglas land, pointed out to General Greever the northeast corner of the Hunt patent at "C."

Greever was the agent of the defendant, the Douglas Land Company, and was endeavoring to determine the true line between Mrs. Monroe and Douglas, and there was evidence tending to show that he adopted the corner at "C," and marked timber to identify it. This evidence was admissible as conducing to establish the plaintiff's claim that the line from "M" to "C" was the correct line.

In *Harriman* v. *Brown,* 8 Leigh 706, Judge Tucker observes: "It is not the mere declaration of Milburn that the witness

gives in evidence, but it is an act, to-wit, the shewing of certain corner trees, which the general reputation of the neighborhood fixed upon as the corners to Harriman's land. * * * Even if Milburn's shewing certain trees as the corners of the land, was not evidence to establish them as corners, the fact that he pointed out trees, which, by other evidence, are established as true corners, could not be rejected."

The objection to the testimony of the same witness that he had received direction from plaintiff's counsel to run the line from "M" to "F" is also without merit. The instruction was given in the presence of counsel for the defendants and their general manager, and the latter likewise directed the running of the line. But it was also proper, by way of inducement, to show why the witness ran the line.

There was, moreover, an exception to the admission of what is known as the Clement deed. That deed embraced 2,574 acres of the western portion of the land allotted to Mrs. Monroe, and called for the dividing line between that allotment and the defendant's land as its western boundary, and was relevant as tending to show that Clement's vendors, who were vendees in the line of Mrs. Monroe's title claimed the line "M" to "F" as their western boundary line.

The next objection was to the admission of the statement of the witness Buchanan that he had heard General Greever say that the Douglas Land Company had twice run the northern line of the 62,800 acre patent.

We think this was relevant evidence to show acts done by the defendant, in its efforts to locate its lines. But, if the testimony were objectionable, the same fact was elicited by the defendant, and consequently cannot be availed of. *Thornton* v. *Garr*, 87 Va. 315, 12 S. E. 753; *Va. & S. W. Ry. Co.* v. *Bailey*, 103 Va. 205, 49 S. E. 33.

Exception 9 was to the introduction of the Fulton entry of April 8, 1837.

There was evidence going to prove that the lines and corners

of that entry were identical with the calls of Hunt's patent,. and it was offered to explain the presence of newly-marked timber in the lines of that patent; and besides, the evidence is admissible, because some of the marked trees in the entry are called for in the partition deeds.

In *Clement* v. *Packer,* 125 U. S. 332, 31 L. Ed. 721, 8 Sup. Ct. 907, it was held that, where the lines and corners of a senior patent had become uncertain, evidence showing the lines of a junior patent, which called for those of the senior patent, was admissible, not as controlling, but to aid in identifying the older lines.

Exceptions 10, 11 and 12 are to the action of the court in refusing to permit the witness Buchanan to answer certain hypothetical questions.

It is sufficient to say, with respect to those exceptions, that the questions propounded were not within the scope of expert testimony, and, if they had been, the record is silent as to what answers were expected to be elicited. *Hollerman* v. *Meisel,* 91 Va. 143, 21 S. E. 658.

Exception 13 involves the action of the court in overruling the motion of the defendant to exclude the testimony of the same witness with reference to the direction given him by Watson, general manager of the Douglas Land Company, to run the line from "M" to "F," on the ground that Watson was dead, and, furthermore, that he had no authority to make a parol disclaimer of the title of his principal.

The ruling was right in both particulars. Buchanan's connection with the case was merely as surveyor and witness, and he had no interest whatever in the litigation. In no sense was he a party to the controversy, and, hence, the rule of exclusion invoked was not applicable. Nor was the direction alleged to have been given by Watson a disclaimer of title in his principal. It was only an acquiescence on his part to running a line which might throw light on the question at issue.

Exceptions 14 and 14½ involve the admissibility of parol

evidence to prove by general reputation and tradition the southwest corner of Furman's patent, which issued in 1788, and the old line between Virginia and Tennessee. It is well settled that such evidence is admissible. *Harriman* v. *Brown, supra; Clements* v. *Kyle,* 13 Gratt. 468, 477. But in this instance, also, similar evidence of the location of the corner had been introduced without objection; and, therefore, under the authorities cited, the exception cannot avail. We think, however, that the opinion of the witness Mock that the corner was on the old state line, was not competent evidence, and ought to have been excluded.

Exceptions 15, 16 and 18 challenge the admissibility of Mock's and Lewis' testimony of what the Debusks had told them concerning the location of the eastern line of the Hunt patent.

In view of the fact that evidence had already been introduced tending to prove that these parties had made similar statements to General Greever, agent of the Douglas Land Company, which had been acted on by him, it is not perceived that the admission of this evidence could have been prejudicial.

Exception 17 is to the admission of the testimony of Lewis that the line between Douglas and Clements was plainly marked.

This objection is founded on the fact that the line had been comparatively recently marked, and that the evidence was self-serving. That question is settled adversely to the exceptor by the case of *Clement* v. *Packer, supra.*

Exception 19 is to the action of the court in overruling the objection to a question propounded to the witness Lewis, with respect to the location of the cliff and traditional origin of the name "Cat Face," a projection of rocks on the western slope of Pound Mountain.

The call in the partition deed to Monroe and wife, after leaving the Hunt and Furman line, is for a line east 400 poles over "Cat Face," to a beech and sugar tree on the dividing

ridge.  Several witnesses testified to the location of that natural monument and the traditional derivation of its name—that the caverns on its face afforded dens to wild-cats.  We think the evidence was admissible to identify the cliff and locate the call in the partition deed.

Exception 20 questions the admissibility of the Fulton entry, and is controlled by what was said in regard to exception 9.

We are of opinion that the leases referred to in exceptions 21 and 22 were rightly excluded.  It was not shown that either of them covered the land in controversy, nor did their relevancy otherwise appear.

There is no avowal of what answers were expected to the questions  whose exclusion is made the ground of exceptions 23 and 24, and, if material, as before observed, the objection could not be considered.

The answer of the witness to the question, the exclusion of which constitutes exception 27, "that he did not know whether there was any controversy over the land referred to," shows that the exception was immaterial.

Exception 28 is to the refusal of the court to strike out the cross-examination of the witness Mock "wherein he speaks of what Mr. White told him of the controversy having been settled."  The exception is amenable to the objection that the exceptor has omitted to point out the specific answers objected to, and for that reason, it cannot be regarded.  *N. & W. Ry. Co.* v. *Ampey,* 93 Va. 108, 25 S. E. 226; *Hughes* v. *Kelly,* 2 Va. Dec. 588, 30 S. E. 387.

We are of opinion that the question and answer which were admitted by the court over the objection of the defendant (exception 29), were merely intended to explain the attitude of counsel in the matter involved, and could not have prejudiced the defendant.

The remaining exceptions (save only the last, which is to the refusal of the court to set aside the verdict as contrary to the law and evidence) are to the giving and refusal of instructions.

It is unnecessary to prolong this opinion by specific consideration of these assignments of error.  We shall content ourselves with calling attention to one of the instructions which the court gave, the unqualified language of which would naturally have induced the jury to give predominance to what they may have believed the commissioners intended, without regard to what they may have done in establishing the line in controversy.  The controlling inquiry in the case at last, is the ascertainment of the line fixed by the commissioners and confirmed by the court; and that fact, if proved and acquiesced in by the parties, would take precedence over any presumed intention of the commissioners.  On the other hand, the intention of the commissioners to be gathered from the partition proceedings, in connection with the facts and surrounding circumstances, constitutes an important factor in aiding the jury to determine the correct location of the line.

In *Smith* v. *Davis,* 4 Gratt. 50, the commissioners intended the dividing line to be a straight line between known corners, and directed the surveyor so to run it; but the land was in forest, and the surveyor, without intending it, ran and marked a curved line.  The court approved an instruction which told the jury that, if they believed from the evidence that the commissioners intended to run the division line as a straight line between ascertained corners, then a straight line was the true division line, unless they should believe from the evidence that the parties had agreed to and acquiesced in the crooked line.  The court also held an instruction erroneous which charged the jury, that if the division line was actually run and marked at the time the division was made, and that the line thus made was the crooked line laid down on the plat returned by the surveyor, the crooked line should prevail, although the call of the plat and report of the commisioners was for a straight division line.  It will thus be observed that the instruction which the court approved modified the effect which the jury were to allow the intention of the commissioners by acquiescence of the

parties in the curved line run and chopped through mistake by the surveyor.

So, in this case, an instruction which ignores the theory of the defendants, that the parties had acquiesced in the line for which they contend, and without qualification yields precedence to the supposed intention of the commissioners, is erroneous. See cases cited in note to *Smith* v. *Davis,* 4 Gratt. (Va. Rep. Ann.) 36, and *Elliott* v. *Horton,* 25 Gratt. 766, 772.

The prayer in question also contravenes the doctrine of that line of decisions which holds that "an instruction must not call special attention to a part only of the evidence and the fact which it tends to prove, and disregard other evidence relevant to the matter in issue." *Seaboard &c. Ry. Co.* v. *Joyner,* 92 Va. 354, 23 S. E. 773; *Hansbrough* v. *Neal,* 94 Va. 722, 27 S. E. 593; *Montgomery's Case,* 98 Va. 852, 37 S. E. 1; *Boush* v. *Fidelity &c. Co.,* 100 Va. 735, 42 S. E. 877.

We are of opinion that, in so far as the ruling of the circuit court in giving and refusing instructions at the previous trial, is in conflict with the views expressed in this opinion, it is erroneous. For this reason, the judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed.*