# Wytheville.

STRAUSE v. RICHMOND WOODWORKING CO.

June 10, 1909.

1. CORPORATIONS—*Liability of Promoters—Instructions—Partial View of Evidence.*—The tendency of modern decisions is to hold that those dealing with promoters shall have the double security of the promoter and of the corporation when one is formed, unless it clearly appears that the liability of the promoter was not intended, or that it was intended to be released when the liability of the corporation began. If, however, there is evidence tending to show that it was not the intention of the contracting parties that the promoter should be liable, but that the corporation and not the promoter should be liable, and it was in fact looked to and part payments received from it until insolvent, an instruction which directs the attention of the jury to that part only of the evidence, which tends to fix a liability on the promoter, and ignores that which tends to support a different conclusion, and authorizes a verdict on the evidence thus singled out, is misleading and constitutes reversible error.

2. CONTRACTS—*Construction—Terms of Contract—Question for Jury—Instructions.*—While the construction of the contract, in the case at bar, was for the court, still the question as to what was the contract or agreement of the parties as to the liability or non-liability of the defendant, who was the promoter of a corporation, was a question of fact for the jury; and, in determining that question, they should have been instructed to take into consideration all of the evidence, oral and written, bearing upon that issue.

3. CORPORATIONS—*Liability of Promoter—Exemption from Liability—Evidence—Credit to Corporations.*—A promoter cannot be held liable in the face of the contract against liability, fairly and legally entered into; and, in determining the question whether or not he has been freed from liability by the other contracting party, facts as to the latter's acts, or of an agreement that he

was not to be held liable, are not to be ignored. The fact that no bill was ever rendered to the promoter, but credit was given on the books of the creditor to the corporation, the goods delivered to it, and payments received from it, and that no demand was made upon the promoter until after the solvency of the corporation became questionable, are very potential in the determination of the question of the liability or non-liability of the promoter.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of *assumpsit.* Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*A. G. Collins* and *Leake & Carter,* for the plaintiff in error.

*Braxton, Williams & Eggleston,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

This writ of error is to the judgment of the Law and Equity Court of the city of Richmond in an action of trespass on the case in *assumpsit,* brought by defendant in error against plaintiff in error to recover a balance alleged to be due on account for the manufacture of a certain implement called a shock binder, delivered to the "American Shock Binder Corporation," pursuant to contract entered into by defendant in error with plaintiff in error. The verdict and judgment are for $3,502.24, and we are asked to review and reverse the judgment because of misdirection of the jury in giving and refusing instructions.

It appears that there were negotiations between plaintiff in error and one Louis Smith, the general manager of defendant in error, leading up to and culminating in certain letters which are alleged to evidence the contract between the parties to this controversy. These letters are as follows:

"May 22, 1906.

"Mr. M. M. Strause,

"c/o Bache Implement Co., City.

"Dear Sir:

"As per your request, we take pleasure in quoting you on 25M shock binders, as per sample submitted.

"We can furnish this lot at 23¢ each, f. o. b. our works. Terms: 2% in 10 days; 30 days net. This estimate is based on the following specifications:

"The binder to·be manufactured equal in workmanship and material to the sample submitted, to have not over 10 feet of rope to each binder; your company is to furnish the necessary castings, finished complete with holes drilled to secure same to spindle. We will not assume any responsibility for any delay in the delivery of these castings.

"We would suggest that you place your order with us at once, as it will take a little time to prepare for this work, and you have our assurance that everything possible will be done to rush this order to completion upon receipt of castings. We cannot promise prompt delivery if the order is not placed before May 29th, owing to the large quantity of other work at our mill.

"Sincerely trusting to hear favorably from you, we remain,
            "Yours very truly,

                "RICHMOND WOODWORKING COMPANY,
                "LOUIS SMITH, General Manager."

"May 29/06.

"Richmond Woodworking Co.,
        "City.

"Dear Sirs:

"Yours of the 22nd instant received, and I herewith order 25,000 Fountaine shock binders, as per sample now in your

possession, upon the terms and conditions specified in your letter of 22nd instant, at the price of twenty-three cents each.

"Yours truly,

"M. M. STRAUSE,
"For AMERICAN SHOCK BINDER CORP."

The oral testimony and the letters themselves tended to prove that there had been not only negotiations between the parties prior to the letters, but that the general manager and agent of the defendant in error was apprised and fully understood that plaintiff in error was negotiating for and on behalf of the American Shock Binder Corporation, which was chartered on the 13th day of June, 1906, and organized on the 22nd day of June, 1906. Such was the character of the negotiations leading up to the written correspondence, that it was fully understood that plaintiff in error was acting for the company in process of being organized, and not for himself, and in fact this is admitted by Smith in his examination as a witness on behalf of defendant in error.

It further appears that the first shock binders, by direction of plaintiff in error, and quite naturally in view of the facts and circumstances which the evidence tended to prove, were delivered by defendant in error, not to the plaintiff in error, Strause, but to the American Shock Binder Corporation, on the 29th day of June, 1906, about two weeks after it was chartered and about one week after it was organized, and were accompanied by a delivery ticket addressed, not to the plaintiff in error, but to the American Shock Binder Corporation; that all the shock binders made were so delivered; that accounts were rendered by defendant in error, not to plaintiff in error, but to the Shock Binder Corporation; that all the charges on the books of defendant in error therefor were made, not against plaintiff in error, but against the American Shock Binder Corporation, and all payments thereon, amounting to more

than $1,500, were made by that corporation's checks; that the account on the books of defendant in error against the Shock Binder Corporation remainded as charged up to the trial of this cause; and that the bill against plaintiff in error sued on was made out against plaintiff in error, as stated by defendant in error's bookkeeper and witness, "subsequently, after all this trouble" (referring, no doubt, to trouble in getting payment from the Shock Binder Corporation), and after the Shock Binder Corporation had become insolvent.

After the evidence had gone to the jury, the trial court gave, at the request of the defendant in error, four instructions Nos. 1, 2, 4 and 5, over the objection of plaintiff in error, and refused to give instructions "A" and "B," asked by him; and these rulings of the court constitute plaintiff in error's first assignment of error.

While all of the four instructions given for defendant in error were excepted to, the objection urged here is against instruction No. 1, which is in these words:

"If the jury believe from the evidence that the defendant wrote or caused to be written, to the plaintiff, and mailed or delivered, or caused to be mailed or delivered, to the plaintiff, the letter in evidence, which is dated May 29/06, and which is signed 'M. M. Strause, for American Shock Binder Corp.,' and if the jury further believe from the evidence that the defendant, in using the words following his name, viz.: 'for American Shock Binder Corp.,' referred to a contemplated or proposed corporation, but one for which no charter of incorporation had, at that time, been granted; then the jury are instructed that the said letter bound the defendant, M. M. Strause, personally and individually, just as if the said words 'for American Shock Binder Corp.' had not been added after the defendant's name; and that the said letter, together with the letter of the plaintiff, to which it refers, constituted a contract between the plaintiff in this case and the said defendant, M. M. Strause, personally and individually."

Upon the soundest reasoning, the tendency of the courts in recent years is to an adherence to the doctrine, that those dealing with promoters should be left with the double security of the promoter and the company when one is formed, unless it clearly appears that the liability of the promoter was not intended, or that it was intended to be released when the liability of the corporation began; but where the evidence, as in this case, consisting of oral statements of witnesses as to facts and circumstances and a correspondence in writing, tends to show that it was not intended by the contracting parties that a person active in the promotion and organization of a corporation should be liable for goods or supplies furnished to the corporation, but that the party furnishing the goods or supplies understood and agreed that he was to look to, and did in fact look to and receive payment in part from, the corporation, and was not to look to or demand payment from the promoter or organizer of the corporation, and in fact did not look to or demand payment from him until the insolvency of the corporation; an instruction which directs the attention of the jury to the written evidence only, ignoring the oral testimony, and authorizes a verdict on this evidence, singled out, is misleading and constitutes reversible error.

"An instruction must not call special attention to a part only of the evidence and the fact which it tends to prove, and disregard other evidence relative to the matter in issue." *Douglas Land Co.* v. *Thayer Co.,* 107 Va. 292, 58 S. E. 1101, and authorities there cited.

It is very true that the bill of exception taken with respect to the rulings of the court on the instructions asked and refused certifies that "it was contended by the counsel for the defendant as well as counsel for the plaintiff, in argument of the instructions, that the construction of the contract and the liability or non-liability of the defendant on the letters and evidence in the case was a matter of law for the court to determine and not for the jury;" still the question as to what was

the contract—what the understanding and agreement of the parties—as to the liability or non-liability of plaintiff in error was a question of fact for the jury; and in submitting that question to them they should have been directed to take into consideration all the evidence, oral and written, bearing upon that issue.

While instruction "A," asked by plaintiff in error and refused, refers to the facts and circumstances surrounding the parties in their dealings leading up to the two letters referred to in defendant in error's instruction No. 1, it did not as fully and as fairly as it should have done submit the question as to what was the understanding and agreement of the parties with respect to the liability or non-liability of plaintiff in error, to be determined upon a consideration of all the evidence bearing upon that issue; therefore it was not error to refuse the instruction.

The theory of defendant in error that, in the face of the facts and circumstances which the evidence tended to prove, plaintiff in error was liable in this action, rests entirely upon that line of authorities sustaining the doctrine as stated in Taylor on Private Corporations, sec. 76, viz.: "It follows that the promoter of a future corporation ordinarily is personally liable to the other contracting party, because the promoter has no principal, and the subsequent adoption of the contract by the corporation, when organized, will not free the promoter from his liability to the other contracting party without the consent of the latter, because it cannot be presumed that a party contracting gives credit to a corporation not yet organized, and, therefore, not yet capable of being bound."

The rule as thus stated is general and is unquestionably sound, but to apply it to this case for the benefit of defendant in error, not only would the exception indicated in the rule have to be ignored, but also the elementary doctrine that parties *sui juris* may enter into any contract that they choose to enter into, if the contract be not for an immoral or illegal purpose.

The general rule as to a promoter's liability cannot, in reason or fair dealing, be carried to the extent of holding him liable in the face of his contract against liability, fairly and legally entered into; and, in determining the question whether or not he has been freed from liability by the other contracting party, facts as to the latter's acts, or of an agreement that he was not to be liable, are not to be ignored. Admitted facts, that the creditor delivered his goods to the corporation after its organization, charged the corporation therefor on his books, received payment at different times from the debtor corporation, and never rendered a bill to the promoter for goods delivered to the corporation, or demanded payment of him, until after the solvency of the corporation became questionable, are very potential in the determination of the question of liability or non-liability of the promoter.

Instruction "B," asked by plaintiff in error is as follows: "The burden is on the plaintiff in this case to prove by a preponderance of the evidence that the defendant agreed to make himself personally responsible for the manufacture of shock binders, and if the plaintiff had notice of or from the facts and circumstances surrounding the case, ought to have known that the shock binders contracted for were to be made for a corporation to be formed at the time the contract was made, but which was formed when said shock binders were made, the defendant is not liable personally, unless he agreed to become so, and no such agreement could have existed, unless the minds of the plaintiff and defendant were in accord on this point, unless the defendant employed such language as clearly showed that he intended to bind himself personally, and not the corporation. The fact that the plaintiff may have thought the defendant intended to make himself liable, if such fact existed, is not sufficient to bind the defendant."

For the reasons above stated, the first part of the instruction relating to the burden of proof as to whether plaintiff in error agreed to make himself personally responsible for the

manufacture of the shock binders, etc., is not a correct statement of the law; and the latter part of the instruction, relating to facts and circumstances under which he would be responsible, is but a statement of propositions of law not necessary to have been stated had the jury been correctly instructed upon the main and controlling features of the case. If upon another trial of the case the evidence be substantially as at the former trial, and the jury is instructed as to the law in accordance with the views expressed herein, the giving of instruction "B" in any form will be unnecessary to a proper guidance of the jury in determining the facts.

The remaining assignment of error involves a review of the evidence, and as the case has to be remanded because of misdirection of the jury at the former trial, we deem it inexpedient to express any opinion with respect to the evidence.

The judgment of the lower court will be reversed and annulled, the verdict of the jury set aside, and a new trial awarded, to be had in accordance with the views expressed in this opinion.

*Reversed.*