# CHARLESTON.

GEORGE HALLAUER *et al.* v. FIRE ASSOCIATION OF
PHILADELPHIA.

Submitted February 4, 1919.    Decided February 18, 1919.

1.  INSURANCE—*Fire Insurance—Commencement of Risk.*

   Unless the application so provides, it is not necessary that a
   policy of fire insurance be issued before protection becomes effec-
   tive.   Insurance commences, as a general rule, at the date on which
   the contract to insure is consummated by the acquiescence of the
   parties, whether that is the date of the issuance of the policy or
   earlier.   (p. 404).

2.  SAME—*Fire Insurance—Contract—Application and Acceptance.*

   A contract of insurance, like any other contract, consists gener-
   ally of two prerequisites, an offer or application and its
   acceptance.   (p. 404).

3.  SAME—*Fire Insurance—Limited Acceptance—"Binding Slip."*

   Where the insurance is to become effective or the risk attach
   before the application has been formally accepted by the insurer,
   frequently a limited acceptance or "binding slip" is given stat-
   ing such fact.   (p. 404).

4.  CUSTOMS AND USAGES—*Fire Insurance—Liability.*

   But where the testimony offered in the case shows the exist-
   ence of a custom among insurance agents and companies that, in
   cases of applications for fire insurance, where the agent agrees to
   try to write the policy, all the terms having been agreed upon,
   the insurance is regarded as in force from the date of the appli-
   cation, subject to cancellation by the company, and where the acts
   of the agent are such as reasonably tend to indicate his intention
   to regard the policy as in force, and the jury finds from the evi-
   dence that such was his intention, the insurer is bound to compen-
   sate for the loss of the property incurred prior to notice of
   cancellation.   (p. 405).

5.  CONTRACTS—*Interpretation—Agreement—Question for Jury.*

   Though the interpretation of contracts when made and free
   from ambiguity is a question for the court, the determination of
   whether the facts proved or admitted are such as constitute an
   agreement binding the parties generally is within the province of
   the jury to ascertain from facts submitted for their consideration
   and judgment.   (p. 406).

6.  ·TRIAL—*Verdict—Interest—Pleading.*

Though a jury cannot in an action on a contract allow damages beyond the amount laid in the declaration, yet it may add to that sum interest, though the aggregate exceed the amount demanded by the pleading; and where the excess can rightfully be attributed to interest, the verdict is good.  (p. 408).

7.  APPEAL AND ERROR—*Trial Verdict—Interest—Amendment After Verdict.*

Where a jury awards as damages in an action on a contract a sum slightly in excess of that demanded by the declaration, the excess being explainable as interest to cover the time between the dates of the accrual of the cause of action and the trial of the case, an amendment of the declaration after verdict increasing the amount demanded to a sum sufficient to cover the verdict is not prejudicial to defendant, because unnecessary, the verdict being proper if no amendment had been permitted.  (p. 408).

Error to Circuit Court, Berkeley County.

Assumpsit by George Hallauer and others against the Fire Association of Philadelphia.  Judgment for plaintiffs, and defendant brings error.

*Affirmed.*

*H. H. Emmert,* for plaintiff in error.

*Allen B. Noll* and *Decatur H. Rodgers,* for defendants in error.

LYNCH, JUDGE:

Plaintiffs brought assumpsit to recover the amount of an insurance policy issued, they allege, by the defendant November 2, 1915, to indemnify them against loss that might result, and three days later did result, from the destruction by fire of the property insured, and obtained the judgment to which defendant prosecutes this writ.  The chief defense interposed in the trial court and relied on here rests solely upon the ground that the contract pleaded and offered in evidence never was and is not now such a contract as required defendant to render compensation for the property destroyed.

The facts proved and admitted or controverted and constituting the grounds of recovery and of the defense interposed are these:  Plaintiffs owned and operated a fruit

evaporating plant, the property insured and destroyed.
Trammell & Company, themselves solicitors of insurance con-
tracts for companies represented by them, theretofore had
written policies of insurance for their companies covering
the same property, but which they were directed to cancel
after reporting to the companies respecting the writing of
the policies, presumably because of the apparent hazard in-
cident to property devoted to such use. Acting on behalf
and at the request of plaintiffs, Trammell & Company then
applied to H. L. Alexander, also an insurance solicitor in
the same city, Martinsburg, on November 2, 1915, to write a
policy covering the same property, and to the request he
replied that he would try to write or place it. He did write,
date and countersign the policy sued on as of the date of
the application so as to make it a complete and binding con-
tract of insurance, except as to delivery and revenue stamps,
and directed a clerk temporarily employed in his office to
inclose it and an account against Trammell & Company or
plaintiffs for the usual premium in an envelope properly
noted for delivery, and told her not to deliver it without his
consent. The fire occurred three days later, and without
communicating to Alexander or to any employe of his then
in his office the information that the property was at that
moment being burned, Trammell & Company acting for
plaintiffs procured possession of the policy from a clerk in
Alexander's office, other than the temporary clerk, who was
not advised of the direction previously given, but later Alex-
ander, having knowledge of the delivery and of the fire,
authorized Trammell & Company, plaintiffs' witnesses say,
and he does not deny it, to cause revenue stamps to be af-
fixed to the policy and canceled by his initials "H. L. A.,"
which was done according to his directions. Alexander, on
the other hand, affirmed his intention to have been not to do
anything respecting a contract binding the defendant until
it had consented to be bound, and stated further that as
soon as he heard of the fire he went to the office of Tram-
mell & Company and demanded of their clerk, the principals
being out, the return of the policy. The clerk, however,
flatly denied that any such demand was made upon him,

and the principals, Trammell and Nadenbousch, state that no such demand was made upon them personally or through their office.

A contract for insurance, like any other contract, consists generally of two prerequisites, an offer or application and its acceptance. Unless the application so provides, it is not necessary that the policy be issued before protection becomes effective. Insurance commences, as a general rule, at the date of the policy or at the date on which the contract to insure is consummated by the acquiescence of the parties, even though in the form of a parol contract. *Insurance Co.* v. *Insurance Co.*, 19 How. 318; *Croft* v. *Hanover Fire Ins. Co.*, 40 W. Va. 508. To become a binding contract, however, the party to whom the offer or application is made generally must signify his acceptance, so that in the absence of some provision to the contrary there must be an actual assent to the assumption of the proposed risk, or some act done implying assent from which the insurer cannot recede without liability. 1 Joyce on Insurance (2d Ed.) § 55. When the proposal or application has been accepted by the company itself or by an authorized agent acting for and on its behalf, the act of the agent being the act of the principal, from that moment the contract becomes effective and enforceable. But to constitute such a contract it is not always necessary that acceptance of the risk and the manual delivery of the contract be concurrent or contemporaneous.

Besides, the acceptance may be for a limited period of time, with the right reserved to reject, as in a case where a fire insurance company, having received an application for a policy, contracted to accept the risk for the term of thirty days from date, "unless the applicant is sooner notified of its rejection." *Barr* v. *North American Ins. Co.*, 61 Ind. 488. And this limited acceptance often takes the form of what is known as a "binding receipt" or "binding slip" given by an authorized agent pending the ascertainment of the company's willingness to assume the burden of the proposed risk. 1 Joyce on Insurance (2d Ed.) §§ 64, 65. The effect of such a receipt generally is to protect one seeking insurance until the company acts upon the application, and if

it elects to exercise the right reserved to decline to accept that burden, the binding effect of the slip ceases *eo instante*. See also *Tucker* v. *Mutual Fire Ass'n.*, 71 W. Va. 690.

Thus it is seen, where the insurance is to become effective or the risk attach before the application has formally been accepted by the insurer, frequently a limited acceptance or binding receipt is given stating such fact. In this case Alexander, agent of the defendant company, in stating that he would try to write the policy, used language which from its general tenor, and in the absence of modifying circumstances, might give the impression that it was his intention to communicate with some one or more of the companies represented by him before the conclusion of the insurance contract and the issuance of the policy. There was no agreement for a limited acceptance or binding receipt given. The only case similar to this which a careful investigation has disclosed, though it differs materially on its facts, is that of *Whitman* v. *Milwaukee Fire Ins. Co.*, 128 Wis. 124, in which the agent, replying to the applicant, told the latter that he "would see to it, take care of it so it would be all right;" would "get a policy." The court said: "Evidence that the circumstances characterizing an application were closed by a mere promise on the part of the agent to attend to the matter of obtaining a policy of insurance, is proof that no contract of insurance was supposed to be closed *in praesenti*." And the court further said that to establish that something out of the ordinary was contemplated, namely, the actual closing of a contract precedent to the issuance of a policy, reasonably clear evidence is required to show that the minds of the parties met on the precise proposition.

But it is contended by the plaintiff that the testimony offered in the case shows the existence of a custom among insurance agents and companies that in cases of application for fire insurance, where the agent agrees to write or place the risk, all the terms having been agreed upon, the policy is regarded as in force subject to the rejection of the application by the company, and from that custom and the circumstances appearing in the case it is urged that the insurance became effective from the date of the application, though

there was no express understanding to that effect and no binding receipt given.

The circumstances upon which plaintiffs rely to show that defendant's agent, Alexander, was acting in accordance with the custom proved at the trial are: That he had the policy written at once on the day the request for insurance was made and dated as of that day; that he countersigned the policy knowing that it provided that "this policy shall not be valid unless countersigned by the duly authorized agent of the company at Martinsburg, West Virginia;" that he entered the policy name, number and premium charge in his company book as of that date, that being the book in which it was his custom to keep the accounts of the different companies which he represented, and in which he entered "each policy as it is written to keep the number of the policy, the company and date;" that the premium on the policy if collected would have run from the date of the policy, i.e., the date of the application; that the policy was delivered to the plaintiffs' representative by the agent's clerk; that the agent, or his clerk at his direction, after knowledge of the delivery of the policy and of the fire, called Trammell & Company over the 'phone and authorized them to place on the policy the revenue stamps omitted by the former, and deduct their cost from the premium, a fact not denied by the agent when on the stand; that Trammell & Company, who had written two policies on this risk, both of which were directed to be canceled by the companies when informed that they had been written, regarded its policies as having been in force until they were canceled . The only testimony to the contrary was that by Alexander, who insisted that he did not intend to bind defendant until it had a fair opportunity to express a willingness to carry the risk, and who stated that as soon as he heard of the fire he went to the office of Trammell & Company and demanded of their clerk, the principals being out, the return of the policy, a statement flatly denied by the clerk and by the principals.

Not what he declared after the fire as to his intentions at the time of the application for the policy, but what he admits or the proof shows he actually did before and after the

fire controls. The sufficiency of these acts and whether they were proved were submitted to the determination of the jury. Though the interpretation of contracts when made and free from ambiguity is a question for the court, the determination of whether the facts proved or admitted are such as constitute an agreement binding the parties generally is within the province of a jury to ascertain from the facts submitted for their consideration and judgment. *Bowyer* v. *Knapp,* 15 W. Va. 277; *Strause* v. *Richmond, etc. Co.,* 109 Va. 724; *Art Syndicate* v. *German Ins. Co.,* 213 Pa. 506; *Manson* v. *Metropolitan Surety Co.,* 112 N. Y. Supp. 886.

This question was adequately presented to the jury by defendant's instruction No. 3, which, as modified by the court, is: "The court instructs the jury that before they can find a verdict for the plaintiff, they must believe from the evidence that H. L. Alexander, the agent of the defendant, at the time of the application for the insurance covered by the policy in the suit, * * * intended to issue a policy in one of the insurance companies represented by him which would be effective until canceled by the company whose policy should be so issued." This instruction presented squarely to the jury the question of Alexander's intention. Assuming that intention to have existed, as the jury apparently found it so to exist, they were justified further from the evidence in finding that he, as general agent, had ample authority to bind his companies until they approved or canceled the policy. *Brown* v. *Franklin Mutual Fire Insurance Co.,* 165 Mass. 565. There is in the record no question or doubt raised by pleading or proof as to the authority of Alexander in the capacity of and as possessing all the powers of an agent to countersign and issue contracts binding defendant, or that for such purpose defendant furnished him with blank policies of insurance duly executed except as to dates, blanks and his counter-signature, and these defendant empowered him to complete and issue as and when necessary fully to consummate a binding contract when delivered.

The complaint founded upon instructions is the refusal to give defendant's instruction No. 5 as requested, and its

modification by eliminating the phrase, "the defendant is not bound by local technical terms." Before modification it read: "The court instructs the jury that (the defendant is not bound by local technical terms, and) unless the expression, 'I will try to write the policy,' is a general technical term known and used by the insurance companies generally, then the jury must give the said phrase its usual construction." Striking out the phrase does not make a material alteration or change in the purpose of the instruction, because if the so-called technical phrase is not general it is necessarily comparatively local, and the latter sense or meaning is certainly implied in the language used, and the implication has a force equivalent to that in the instruction as propounded by defendant; at least the similarity is so apparent between the two forms as not to warrant a reversal of the judgment.

The last assignment to be considered is the leave asked and granted to amend and the amendment of the declaration after the jury had rendered the verdict and defendant had moved the award of a new trial by striking out $1,000 and inserting in lieu thereof $1,500 to correspond with the praecipe and process, the former sum being that called for in the policy, in consonance with which the jury found, except that they apparently added interest to cover the time between the dates of the accrual of the cause of action and the trial of the case, the verdict being for $1,054.33. Obviously defendant's rights were not impaired by the amendment of the ad damnum clause of the declaration to correspond with the damages specified in the summons, for no amendment of the declaration was in fact necessary. While it is true that the jury cannot in an action on a contract allow damages beyond the amount laid in the declaration, yet it may add to that sum interest, though the aggregate exceed the amount demanded by the pleading; and where the excess can rightfully be attributed to interest, the verdict is good. Section 14, ch. 131, Code; *Salem Terminal Traction Co.* v. *McGraw*, 66 W. Va. 321; *Georgia Home Ins. Co.* v. *Good*, 95 Va. 751. Since the verdict would thus have been proper if no amendment of the declaration

had been permitted, the amendment therefore was not prejudicial to defendant.

Judgment affirmed.                                    *Affimed.*