[Civ. No. 4274. Third Appellate District.—May 29, 1931.]

KENNETH MacDONALD, Jr., Appellant, v. ARROW-HEAD HOT SPRINGS COMPANY (a Corporation) et al., Respondents.

Andrew J. Copp, Jr., for Appellant.

Walter E. Burke for Respondents.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal from that portion of a judgment which was rendered in favor of the defendant Seth Marshall, in an action for the reasonable value of the services of an architect. It is contended the defendant Seth Marshall is personally liable for the obligation as a promoter of the corporation.

The Arrowhead Springs Company is a duly organized corporation. It owns a large tract of land in Cold Water Canyon near San Bernardino, upon which there is located a number of hot mineral springs. This company was engaged in the business of bottling and marketing the water of these springs. The defendant Seth Marshall owned 5,000 shares of the stock of this corporation, which was one-third of the entire capital stock thereof. One of the other shareholders of this company was Mr. Charles G. Anthony, who was its business manager. January 15, 1924, three of the other shareholders of this corporation executed and delivered to John B. Elliott an option to purchase their 10,000 shares thereof at the par value of $100 a share.

These payments were to be made in semi-annual installments of $100,000. The first installment became due January 1, 1925. Just prior to the last-mentioned date, for a valuable consideration, this option was sold and assigned to Mr. Marshall. This option was, however, not exercised, and became void. Mr. Marshall was anxious to sell his interest in this company, but was unable to do so. Upon the advice of Mr. Anthony, a new corporation, named the Arrowhead Hot Springs Company, was duly incorporated April 24, 1924. This new company was incorporated for $5,000,000. Mr. Marshall owned one-third of the stock in the new company; 1287 acres of the land belonging to the original corporation were to be conveyed to the new company.

Mr. Anthony was elected vice-president and was employed by the new corporation to conduct a campaign for the sale of its stock. The record contains evidence to the effect that he was to receive five per cent of the money paid for the sale of all stock. He employed two expert brokers to assist him in the campaign. July 9, 1924, the corporation commissioner of California authorized the issuing and sale of 35,000 shares of the stock of this new corporation upon specified conditions. Twenty per cent of the money received from the sale of stock was authorized to be expended on account of the cost of the sale thereof. Mr. Marshall testified that Anthony was to retain five per cent of all such receipts for his own compensation, and that he agreed to assume the responsibility of paying for all obligations incurred incident to the sale of stock from the expense money authorized by the corporation commissioner to be retained. At the time of the organization of the new corporation Mr. Marshall was ill and took no active part in the plans for the campaign to sell stock. Mr. Anthony assumed exclusive charge of this task.

Without consulting Mr. Marshall regarding the procedure, Anthony employed the plaintiff to make elaborate plans and drawings of a proposed hotel, casino, gardens and improvements for a high-class country club which was estimated to cost some $3,000,000. The plaintiff does not claim to have conferred with Marshall about this employment. The defendant Marshall testified that he never heard of these plans and specifications until November, 1924. He was then taken to the architect's office and shown some of these plans and a prospectus for the future proposed improve-

ments. The plaintiff does not state that he approved them or assumed any personal liability for this service. Mr. Marshall testified regarding this visit to the architect's office: "It was a perfect surprise to me when they showed me those things. . . . I said, 'it is damn ridiculous', which it was, but I didn't suppose I had any interest in it." The plan for the sale of stock failed. All of the money which was collected in that manner was returned to the subscribers, except twenty per cent thereof, which was authorized by the corporation commissioner to be retained as necessary expenses incident to the sales of stock. None of this money was ever received by the defendant Marshall.

The evidence is satisfactory to the effect that the defendant Marshall did not personally employ the plaintiff, and that the services were not rendered in reliance upon the responsibility of the defendant Marshall. Upon the contrary, it satisfactorily appears that the campaign for the sale of stock in the new corporation, including the employment of the plaintiff as an architect, was under the direct management of the vice-president of the new corporation, Charles G. Anthony. It does not appear that the defendant charged this account for services against the defendant Marshall. No bill for these services was ever rendered to him. Marshall had no intimation the plaintiff sought to hold him personally liable for this obligation until the suit was filed. The plans were in fact delivered at the office of the corporation.

There was no dispute over the value of the services which were rendered. Upon trial, the court adopted findings to the effect that the Arrowhead Hot Springs Company was indebted to the plaintiff for services performed of the reasonable value of $25,000, but that the defendant Marshall was not personally obligated therefor. A judgment was accordingly rendered for that sum against the corporation. It was, however, decreed that the plaintiff take nothing in his action against the defendant Seth Marshall. From that portion of the judgment which is in favor of the defendant Marshall the plaintiff has appealed.

There is no merit in this appeal. It is contended the defendant Marshall is personally liable for the obligation for services of the architect as a promoter of the new corporation. Anthony, rather than the defendant Marshall,

appears to have been the promoter of the new corporation. It was organized to sell the stock of the entire original corporation. Moreover the organization of the corporation was entirely completed before the obligation was incurred. The plaintiff inquired and ascertained that the corporation was in existence. Anthony had no authority to bind Marshall for personal liability. The plaintiff had no assurance from Marshall that he assumed the liability. The burden is upon the plaintiff to establish the personal liability of Marshall by a preponderance of the evidence. In the absence of evidence to the contrary the plaintiff will be deemed to have relied upon the corporation for the payment of his claim for services and not upon an individual promoter thereof. ■ Ordinarily a promoter is one whose activities are instrumental in bringing the corporation into existence. Obligations which are incurred by a corporation after its organization has been completed are not chargeable to an original promoter in the absence of evidence which imposes such liability.

In 1 Thompson on Corporations, third edition, 106, section 96, promoters are defined as follows: ''The persons who, for themselves or others, take the preliminary steps to the organization of a corporation are called promoters. They are the ones who bring about the incorporation.''

■ It is true that an individual who procures the subscription for stock in a proposed corporation, upon misrepresentations to the effect that certain land is to be conveyed to the organization, may be held liable as a promoter for failure to do so even after the corporation has been fully established. (*Burbank* v. *Dennis,* 101 Cal. 90 [35 Pac. 444] ; *Ex-Mission L. & W. Co.* v. *Flash,* 97 Cal. 610 [32 Pac. 600].) But services which are performed in behalf of a corporation after it has been fully organized, which services are not incident to the creation of the company or held out by a stockholder to be an inducement therefor, may not be considered promotion services, or make the individual liable therefor in the absence of an agreement to that effect.

■ In the present case the services of the architect were performed after the corporation was fully organized and as a part of the proposed enterprise of that company. They were for the benefit of all the stockholders therein.

It would be useless to attempt to distinguish the numerous authorities which have been cited in the briefs in this case. They do not apply to the facts which are here presented. An apt statement of the general principle of law upon which the appellant relies is found in 14 C. J., at page 269, as follows: "Of course promoters of a corporation are personally liable on contracts which they have entered into personally, even though they have contracted for the benefit of the projected corporation, and although the corporation has been formed and has received the benefit of the contract; and they are not discharged from liability by the subsequent adoption of the contract by the corporation when formed, unless there is a novation or other agreement to such effect; and where they have thus entered into a contract personally they are liable for services rendered under the same after the formation of a corporation, in the absence of a novation or other agreement to the contrary. On the other hand, they are not personally liable on the contracts made in the name and solely on the credit of the future corporation, and not on an express or implied representation that there is an existing corporation, where such intention is known to the other contracting party, unless they are contracts which the corporation when formed has no power to ratify or adopt. Whether a contract was made by the promoters personally or on the credit of the corporation only may be a question of fact or one of law according to circumstances."

The question as to whether a contract was incurred on the credit of an individual promoter or upon the responsibility of the prospective corporation, may become one of fact or law, dependent upon the circumstances. If the contract rests entirely upon parol evidence, or upon ambiguous terms of a written agreement which requires parol evidence to construe, the liability ordinarily becomes a problem for the jury or the trial court to determine. (*Carmody* v. *Powers*, 60 Mich. 26 [26 N. W. 801]; *Strause* v. *Richmond Woodworking Co.*, 109 Va. 724 [132 Am. St. Rep. 937, 65 S. E. 659]; *Lake* v. *Argyll*, 6 Q. B. 477, 115 Eng. Reprint, 1168; *Schwedtman* v. *Burns*, (Tex. Civ. App.) 11 S. W. (2d) 348.)

In the present action it became a question of fact to be determined by the trial court as to whether it was intended that the services of the architect should become a personal

liability of a promoter or an obligation of the corporation. The court found that the defendant Marshall was not personally liable for the obligation. There is substantial evidence to support this finding. This court is therefore bound by the conclusion of the trial court in this regard.

The judgment is affirmed.