423 S.E.2d 863

**Anthony WILSON, Plaintiff Below, Appellee,**

v.

**LONG JOHN SILVER'S, INC., Defendant Below, Appellant.**

**No. 20889.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1992.

Decided Oct. 23, 1992.

Mark H. Hayes, Huddleston, Bolen, Beatty Porter & Copen, Huntington, for appellee.

John E. Jenkins, Jr., Evan H. Jenkins, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, for appellant.

BROTHERTON, Justice:

The appellant, Long John Silver's, Inc., appeals from the May 29, 1991, and July 15, 1991, orders of the Circuit Court of Cabell County which denied the appellant's motion for summary judgment, a directed verdict, and a judgment notwithstanding the verdict. The issue is whether the Long John Silver's employment manual was a unilateral contract of employment which included a promise of progressive discipline, which was not done, instead of immediate termination of employment. Wilson filed suit against Long John Silver's for breach of an alleged employment contract. On May 20, 1991, the Cabell County jury awarded Wilson $41,344.00 in damages for the breach of an employment contract. For reasons stated below, we reverse the May 29, 1991, order of the Cabell County Circuit Court.

The appellee, Anthony Wilson, was employed as a manager of a Huntington, West Virginia, Long John Silver's Seafood Shoppe. He was discharged on August 2, 1988, after an employee reported that Wilson was "horseplaying" in the kitchen of the Long John Silver's shoppe, including wrestling and punching with employees while on duty. Long John Silver's argues that such actions are very dangerous because of the kitchen equipment with stoves, hot grease, knives, and machinery. They also point out that such actions do not present a professional image to customers who might glimpse the "horseplay" from the dining room.

Long John Silver's director of operations, Vernon Shaulis, received a phone call from one of the employees at Wilson's shoppe, Ms. Meadows, complaining of the horseplay. Ms. Meadows stated that, over the preceding six months, Wilson had been wrestling with other shoppe employees, and hitting and punching them as well. Meadows also told Shaulis that because of Wilson's behavior she and other employees were going to quit. Shaulis visited the store and interviewed several other employees, who confirmed the story. Shaulis then contacted the personnel officer at Long John Silver's corporate headquarters in Lexington, Kentucky. The personnel office reviewed the evidence with their in-house legal department and confirmed that Shaulis could discharge Wilson at his discretion. Thus, on August 2, 1988, Shaulis met with Wilson and asked him if the employees' statements were true.[1] The transcript does not provide Wilson's response. Shaulis then issued Wilson a written notice of unsatisfactory performance which terminated his employment.

Long John Silver's decision to discharge the appellee was based on their Administration Policies and Procedures Manual (manual). The manual stated that "the supervisor should determine what corrective action is appropriate based upon the circumstances and the severity and frequency of the violation." A separate section in the manual contained a policy/procedure entitled "Employee Discipline." This policy/procedure set forth a suggested system of progressive discipline in various steps, beginning with a verbal warning and ending with termination with a written note of

---

1. At trial, Wilson later admitted that the wrestling and punching was going on in the shoppe and that he could understand why the petitioner would be worried about someone getting hurt.

unsatisfactory performance. Some situations, however, called for termination on the first offense.

Progressive Discipline Section. There are some circumstances which warrant discharge for the first offense. Some of the infractions are listed in Personnel 5–03.

Personnel 5–03 provides:

3.1  Immediate Discharge

Certain actions that violate the philosophy of the Company and interfere with normal operations may warrant "immediate" discharge. Such circumstances include, but are not limited to:

\* \* \* \* \* \*

Gambling, fighting, or provoking a fight on Company premises.

\* \* \* \* \* \*

Engaging in any activity which may result in bodily injury to fellow employees or guests or damage to Company property.

Long John Silver's argues that Wilson's actions, although just horseplay, constituted engaging in an activity which could result in bodily injury or property damage. Furthermore, Long John Silver's also points out that on April 8, 1986, Wilson had received a written warning with respect to the same type of conduct. That notice stated:

... There is not to be any squirting of each other in the shoppe with squirt guns or other forms of spray bottles at any time. We are professional people and are to conduct ourselves as such at all times. Our guests do not visit us to view such duties. Also, horseplay can get someone hurt.

\* \* \* \* \* \*

Failure to demonstrate a reasonable and diligent effort to improve performance may result in termination prior to any target date set forth above. *The next incident or similar incident may also result in immediate termination.* (Emphasis added.)

Wilson signed this notice on April 8, 1986.

By contrast, Wilson contends that the manual created a unilateral employment contract and the general provisions which provided for progressive discipline should have been followed. His allegations involving a breach of that contract center around Long John Silver's failure to follow its own policies and procedures requiring (1) a complete investigation of any incident, (2) consistent and equitable disciplinary measures, and (3) exploration of alternative discipline short of termination.

This Court enunciated the rule regarding employee handbooks and unilateral employment contracts in *Cook v. Heck's, Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986). Generally, employment in West Virginia is considered to be at will unless an exception applies. At will employment "may be terminated, with or without cause, at the will of either party." *Id.* at 372, 342 S.E.2d at 457 (citation omitted). One of the exceptions to this rule is that where contractual or statutory provisions exist to the contrary, or where public policy dictates a different result, an employee may not be terminated at will. *Id.* In *Cook*, this Court held that "[c]ontractual provisions relating to discharge or job security may alter the at will status of a particular employee." *Id.* at syl. pt. 3. *Cook* recognized that "[a]n employee handbook may form the basis of a unilateral contract if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons." *Id.* at syl. pt. 6. We can find no relevant statutory provision or public policy reasons which would limit the employment at will relationship. Thus, we must determine if a contractual reason exists to prevent termination at will.

In *Cook*, we discussed what was sufficient to modify the employment at will relationship:

The inclusion in the handbook of specified discipline for violations of particular rules accompanied by a statement that the disciplinary rules constitute a complete list is prima facie evidence of an

offer for a unilateral contract of employment modifying the right of the employer to discharge without cause.

at 374, 342 S.E.2d at 459. In *Suter v. Harsco Corp.,* 184 W.Va. 734, 403 S.E.2d 751 (1991), this Court further defined the unilateral contract theory by stating that the handbook must contain a "very definite" promise of job security. *Id.* at 737, 403 S.E.2d at 754. In our most recent case, *Adkins v. Inco Alloys International, Inc.,* 187 W.Va. 219, 417 S.E.2d 910 (1992), the Court stated that any claim based upon an employee manual or policy must be established by clear and convincing evidence. "Where an employee seeks to establish a permanent employment contract or other substantial employment right, either through an express promise by the employer or by implication from the employer's personnel manual, policies, or custom and practice, such claim must be established by clear and convincing evidence." *Id.* at syl. pt. 3.

■ Our review of the manual reveals that it did not include any statement proclaiming that the manual was not a contract of employment. However, as Long John Silver's points out, the statements of "Circumstances Warranting Discharge" and "Progressive Discipline" situations did not constitute complete lists since the sections stated "[s]uch infractions include, but are not limited to: . . ." and "[s]uch circumstances include, but are not limited to: . . .," respectively. We cannot find any clear and convincing evidence that the manual contained a promise, let alone a definite promise, sufficient to modify the employment at will relationship.

■ However, even assuming that the Long John Silver's manual modifies the employment at will relationship to create a contract of employment, Wilson's argument fails to account for the "Immediate Discharge" section which permits immediate discharge upon a specific finding of fighting or causing danger to employees or damage to property. It is irrelevant

whether the employment manual creates a unilateral contract which alters the at will relationship when the employee was properly fired without recourse to progressive disciplinary steps provided for in the manual. Wilson was not entitled to progressive discipline because the rule he violated called for immediate discharge, regardless of whether the manual was a contract or not. There is no question that punching fellow employees or wrestling on the floor of a kitchen, surrounded by hot grease and assorted kitchen utensils would constitute "activities which may result in bodily injury to fellow employees . . . or damage to Company property." However, if an employee violated another company rule which did not call for immediate discharge, yet was terminated without the progressive disciplinary steps provided for in the manual, then the issue of whether the manual provided a unilateral contract of employment altering the employment at will relationship may be relevant. ·

"Generally, the existence of a contract is a question of fact for the jury." [2]  *Cook v. Heck's,* 176 W.Va. at syl. pt. 4, 342 S.E.2d at syl. pt. 4. In *Cook,* we pointed to syllabus point 5 of *Hallauer v. Fire Association of Philadelphia,* 83 W.Va. 401, 98 S.E. 441 (1919), which states:

> Though the interpretation of contracts when made and free from ambiguity is a question for the court, the determination of whether the facts proved or admitted are such as to constitute an agreement binding the parties generally is within the province of the jury to ascertain from facts submitted for their consideration and judgment.

*Id.* at 407, 98 S.E. at 457. In this case, however, there is no need for this question to go to the jury. Where an employment manual provides for immediate discharge for a specific reason, it is irrelevant whether the handbook creates a unilateral contract when that valid, specific reason exists for immediate discharge without recourse to progressive disciplinary steps.

■ The appellee's secondary argument is that no investigation by Mr. Shaulis took

---

**2.** In *Suter, supra,* the dissent argued that under the facts of that case, the employer's determination that the employee was engaged in the alleged conduct should be reviewed by the jury. 184 W.Va. at 743, 403 S.E.2d at 760. However,

the majority let stand the employer's determination of fault and merely examined whether the handbook created a definite promise of job security.

place as required by the manual and, therefore, even immediate discharge for the specified reasons was invalid. This argument is without merit. Mr. Shaulis questioned several employees prior to discussing termination with Headquarters. Headquarters gave him the authority to discharge at his discretion, but did not instruct him to. Wilson was terminated after being questioned. We believe an adequate investigation was performed.

■ Rule 50 of the West Virginia Rules of Civil Procedure sets forth the necessary elements of a directed verdict motion. Rule 50(a) provides:

> Motion for directed verdict: When made; effect.—A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a direction verdict is effective without any assent of the jury.

In *Powell v. Time Ins. Co.*, 181 W.Va. 289, 382 S.E.2d 342 (1989), we ruled that when the plaintiff's evidence, viewed in the light most favorable to him, fails to establish a prima facie right of recovery, the court should direct a verdict in favor of the defendant. Even after viewing the evidence in a light most favorable to Mr. Wilson, we believe he failed to establish a prima facie right of recovery. Consequently, the trial court should have granted the directed verdict motion.

Accordingly, we rule that the Circuit Court of Cabell County erred in denying the appellant's motion for a directed verdict.

Reversed.