MORRIS WIENER, Respondent, v. THE NATIONAL BANK OF COMMERCE IN ST. LOUIS, a Corporation, Appellant.*

St. Louis Court of Appeals. Opinion Filed June 13, 1924.

1. **APPELLATE PRACTICE:** Evidence: Cumulative: Rejection of Testimony Which Would Not Have Changed Result: Not Reversible Error. In an action against a bank for money had and received

under a contract wherein defendant bank agreed to issue to plaintiff its check on Petrograd for four thousand rubles when paid for by plaintiff, and it appears that plaintiff performed every requirement exacted of him by the terms of the contract, and defendant refused to issue the check, the rejection of testimony offered by defendant showing the condition existing between this country and Russia with respect to the bank's inability to transmit a letter of advice to its Russian correspondent, and also as to the custom existing and followed in the matter of exchange between this country and foreign countries, which was merely cumulative and could not change the result, was not reversible error.

2. **BANKS AND BANKING**: Contracts: Contract of Bank to Issue Check on Foreign Bank: Inability to Forward Letter of Advice: Bank Not Excused from Issuing Check According to Contract: Liability. In an action against a bank for money had and received, where defendant agreed to issue to plaintiff its check on Petrograd when he completed his payments of a specific sum, and plaintiff performed and defendant refused to perform when it conceded that the funds were in the Petrograd bank for the purpose of meeting the check when presented, the fact that it could not get a letter of advice to its Russian correspondent did not excuse it from performing a contract it had agreed to perform.

ON MOTION FOR REHEARING.

3. ———: ———: ———: Construction: Contract Inseparable: Recovery Not Limited to Value of Foreign Money. A contract by a bank whereby it agreed to issue to plaintiff its check on Petrograd for four thousand rubles when paid for by plaintiff, cannot be separated into two or three parts permitting the defendant upon breaching the contract by refusing to issue its check on Petrograd, to treat the transaction as a sale of Russian rubles so that plaintiff should only be entitled to recover the rubles which defendant had purchased for him.

---

*Headnote 1. Appeal and Error, 4 C. J., section 2994; 2. Banks and Banking, 7 C. J., section 234 (1926 Anno); 3. Banks and Banking, 7 C. J., section 234 (1926 Anno).

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Franklin Miller,* Judge.

AFFIRMED.

*D'Arcy & Neun* for appellant.

(1) A written instrument is open to explanation by parol of extrinsic evidence when it is expressed in short and incomplete terms or is fairly susceptible of two constructions, or where the language employed is vague, uncertain, obscure or ambiguous. 22 C. J. 1174, notes 42, 43 and 44; Amonett v. Montague, 63 Mo. 201; Interior Linseed Co. v. Becker-Moore Paint Co., 273 Mo. 433, 202 S. W. 566; Phillips v. Barnes, 105 Mo. App. 421; 22 C. J. 1207, notes 13 and 14. (2) Where the meaning of the parties is uncertain from the words used and it is not within the power of the court to ascertain their meaning by reference to the body of the instrument, evidence of the acts of the parties contemporaneous with and immediately prior to the execution of the instrument may properly be considered. 22 C. J., p. 1179, note 57; Coffman v. Saline Valley Railroad Co., 183 Mo. App. 622, 167 S. W. 1053; Gusmann v. Trish, 163 Mo. App. 308; Bernero v. McFarland R. E. Co., 134 Mo. App. 290, 114 S. W. 531. (3) Where a writing is deficient in punctuation and the sense may be varied as the punctuation is one way or the other, evidence may be introduced to explain its meaning. Graham v. Hamilton, 27 N. C. 428. (4) The conversation and statements of the parties at the time of or just previous to the execution of the contract between them may be admissible for the purpose of aiding in the construction of the writing. 22 C. J., p. 1180, note 60; Sharp v. Sturgeon, 66 Mo. App. 191. (5) Parol or extrinsic evidence of the intention of the parties may be received to clear up ambiguity by reason of which such intention is not definitely expressed. 22 C. J., p. 1182, note 73; Hartley v. Werner, — Mo. App. —, 196 S. W. 1072; Watkins v. Donnell, — Mo. App., —, 179 S. W. 980; Morey v. Feltz, 187 Mo. 650, 173 S. W. 82. (6) In order to correctly ascertain the intention of the parties to a contract and properly interpret the same, it is competent to inquire into the purposes for which the writing was executed and to this end parol evidence is admissible. 22 C. J., note 86; Philibert v. Burch, 4 Mo. App. 470; Campbell v. Hayden, 181 Mo. App. 681, 168 S. W. 363. (7)

Where any doubt arises as to the true sense and meaning of the words themselves, or any difficulty as to their application, under the surrounding circumstances the sense and meaning of the language may be investigated and ascertained by evidence *dehors* the instrument, for both reason and common sense agree that by no other means can the language of the instrument be made to speak the real mind of the party. In such a case parol evidence is admissible *ex necessitate.* 22 C. J., note 46; Buster Brown Co. v. North Mehornay Furniture Co., 140 Mo. App. 707; Ideal Pump Company v. American Central Insurance Co., 152 S. W. 408; Viernow v. Carthage, 139 Mo. App. 276. (8) Where a written instrument contains words or expressions which are of a technical nature, being connected with some art, science or occupation, and unintelligible to the common reader yet susceptible of a definite interpretation by experts, parol evidence is admitted for the purpose of explaining the language used and thus effectuating the intention of the parties through the medium of their own language. 22 C. J. 1203, note 16. (9) While words in a contract relating to the ordinary transactions of life are to be construed according to their plain, ordinary and popular meaning, yet, if in reference to the subject-matter of the contract, particular words and expressions have by usage acquired a meaning different from their plain, ordinary and popular meaning, those words in such a contract must be taken to have been used in their peculiar sense, and that sense might be fixed by parol evidence. 17 C. J. 498, note 8; Sno-Qualmi Realty Co. v. Moynihan, 179 Mo. 629; Riley-Wilson Grocer Co. v. Seymour, 129 Mo. App. 325. (10) Evidence of custom is admissible to explain the meaning of a receipt given by a bank for the transmission of funds to a foreign country. Kurtzeborn v. Liberty Bank, 253 S. W. 103. (11) The established usage of a bank is binding on persons dealing with it whether they have actual knowledge thereof or not, particularly where it has been so long established that its customers may well be presumed to have known of it, or where it is a general custom among the banks of the place. 17 C. J., p. 464, notes

32, 33, 34 and 35; Adams v. Otterback, 15 How. (U. S.) 539, 14 L. Ed. 805; Yeaton v. Alexandria Bank, 5 Cranch. (U. S.) 49, 3 L. Ed. 33; Columbia Bank v. Fitzhugh, 1 Harr. & G. 239; Raborg v. Columbia Bank, 1 Harr. & G. 231; Jackson v. Union Bank, 6 Harr. & J. 146; Jefferson County Sav. Bank v. Commercial Nat'l Bank, 87 Tenn. 350; Lloyds Bank v. Swiss Bankverein, 108 L. T. Rep. (N. S.) 143.

*Frumberg & Russell* for respondent.

NIPPER, C.—This is an action brought by plaintiff against defendant, for $920, money had and received.

The petition alleges that the defendant received of plaintiff on July 21, 1917, $450, and $25 per month thereafter until $920 had been paid.

Defendant in its answer stated that, on July 21, 1917, "plaintiff purchased from defendant 4000 rubles, on which he made a part payment of $450 on that day and agreed to pay the balance of the purchase price in monthly payments of not less than $25 each on the 10th day of each month, and defendant agreed to issue to plaintiff its check on Petrograd for said 4000 rubles when paid for by plaintiff as above stated."

The answer further alleges that defendant, shortly after the twenty-first of July, 1917, in order to put itself in a position to issue said check, purchased 4000 rubles for the account of plaintiff, and still holds said rubles for plaintiff.

The answer then pleads the custom in dealing with exchange in Russia, and that such custom is to promptly purchase the amount of rubles, and when a draft or check is issued on a Russian bank for the American bank issuing the check, a letter is mailed to the Russian bank on which the check is drawn, called a letter of advice, and that no Russian bank will pay any check so drawn cn it unless it. receives this letter' of advice from the American Bank; that all mail service and communication between the United States and Russia was suspended and discontinued about December, 1917, and has never been

resumed, making it impossible for the defendant to communicate with or forward letters of advice to any bank in Russia; that when plaintiff had completed his payments on November 8, 1918, he demanded from defendant a check on Petrograd for 4000 rubles, but defendant refused to issue the check because it could not get a letter of advice to Russia. The bank offered to deliver to plaintiff the 4000 rubles, but plaintiff refused to accept same.

The reply denied that plaintiff purchased any rubles from defendant, but that defendant agreed to issue to him its check for 4000 rubles when paid for by plaintiff. There are other denials and admissions in the reply which it is unnecessary to set out.

At the conclusion of all the evidence the court gave a peremptory instruction to find for plaintiff for the amount of $920, together with interest from the date of demand, and defendant appeals.

The sole objection urged by the defendant in this court as a ground for reversal, although stated in different ways, is that the court erred in not permitting the defendant to show the custom existing and necessary to determine the manner of transmitting money to foreign countries, and to explain the meaning of this contract as well as the intent of the parties thereto at the time of its execution.

At the time plaintiff paid to defendant the first $450, he received from defendant the following receipt:

"No.............        "St. Louis, Mo., 7/21 1917

Received from Morris Wiener

2905 Dixon Street

$450—for part payment on Ro. 4000—

Check on Petrograd @ 23

Balance of $470—to be paid in monthly payments of not less than $25. each on the 10th of each month.

THE NATIONAL BANK OF COMMERCE IN ST. LOUIS

PER E. OPPENHEIMER."

It appears from the testimony of plaintiff that he went to the defendant bank for the purpose of buying

rubles, and defendant agreed to sell him the same. He went to the exchange department of the defendant bank, and had a conversation with Mr. Oppenheimer who was in charge of that department. This occurred on the twenty-first of July, 1917. At that time he made the initial payment, and the defendant bank, through Mr. Oppenheimer, issued the above receipt. Plaintiff made all the payments as agreed in the contract, and when he had completed his payments in November, 1918, he demanded a check on Petrograd as called for by the contract. The defendant refused to issue to him any check after he had repeatedly demanded the same, and gave as a reason therefor that this country was not allowed to transact any business with Russia, and therefore nothing could be done for him. He then demanded the return of his money, which was also refused.

The court sustained an objection made by plaintiff's counsel to the reading of the deposition of Mr. Oppenheimer, showing the conditions existing between this country and Russia with respect to the bank's inability to transfer a letter of advice to its Russian correspondent, and also as to the custom existing and followed in the matter of exchange between this country and foreign countries. The same objection was made and sustained as to the testimony of other witnesses offered by defendant. However, it does appear from the testimony of A. F. Brueggemann, a witness for the defendant, who was assistant to Mr. Oppenheimer at the time of the transaction, and at the time of the trial in charge of the foreign department of the defendant bank, that, according to the custom in banking circles, the obligations of the defendant would be carried out by delivering to plaintiff its check upon a bank of Petrograd, Russia, for the payment to the plaintiff of the sum of 4000 rubles. But to carry out the contract in any other way, the one entered into between plaintiff and defendant would have to be canceled. It also appears from his testimony that at the time plaintiff concluded his payments no letters of advice could be sent to Russia. He testified that im-

mediately after plaintiff made his first payment, the defendant went into the market in this country and purchased the Russian rubles for plaintiff, or the exchange therefor. He also stated that the defendant bank had an account in Petrograd, and that they had set aside the amount of rubles so purchased by plaintiff, but could not issue their check on Petrograd because the bank in Petrograd would refuse to honor the check unless and until it had received a letter of advice from defendant advising it to pay the check when presented.

The theory of defendant, as shown by its testimony, is not that it had no funds in the bank in Russia to meet this account, but that it would be useless to issue this check when it would not be paid without a letter of advice, and, owing to the inability to communicate with the Russian bank, no letter of advice could be forwarded. It is not contended by defendant that an action for money had and received could not be maintained, and that an action for damages is the proper remedy; therefore it is unnecessary to discuss this phase of the case. The defendant insists here, as stated, that it should have been permitted to show just what the contract between the parties was by explaining the terms used in the receipt by oral testimony. The evidence offered by defendant, and rejected by the court, was merely cumulative of the testimony of the witness Brueggemann, so far as it materially affected the result of this case.

The conditions brought about by reason of the World War have been the cause of many cases of this kind arising in recent years, and the courts have not evolved any strict rule which can be applied to all cases, because the facts vary and differ in many respects. It must be borne in mind in the beginning that this is not a contract to remit funds as was the case in Kurtzeborn v. Liberty Bank —, Mo. App. —, 253 S. W. 103. Nor was there any question raised in the Kurtzeborn case about the admissibility of oral testimony to show the intent and meaning of the parties to the contract. The answer of the defendant in the instant case specifically states that "defendant agreed to issue to plaintiff its check on Pe-

trograd for said 4000 rubles when paid for by plaintiff.''
It is conceded here, or conclusively shown by the evidence, that defendant was to do this as a part of the contract, and that it refused to do so. It is further admitted or conclusively shown that plaintiff performed every requirement exacted of him by the terms of his contract with defendant. Under these circumstances the rejection of the testimony offered by defendant was not error for which this case should be reversed, for had it been admitted it would not have changed the situation. Defendant concedes in its answer that it agreed to issue the check on Petrograd to plaintiff when he completed his payments for the 4000 rubles. Plaintiff performed, and defendant refused to perform when it concedes that the funds were in a Petrograd bank for the purpose of meeting the check when presented. There was nothing to prevent defendant from issuing its check. The funds were ready to pay it, and the mere fact that it could not get a letter of advice to its Russian correspondent would not excuse it from performing a contract it had agreed to perform. A very complete collection and annotation of cases relating to this question may be found in 27 A. L. R., p. 1488, note.

We think under the conceded facts of this case plaintiff was entitled to a directed verdict. Therefore, the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.

ON MOTION FOR REHEARING.

Opinion filed July 8, 1924.

NIPPER, C.—Learned counsel for defendant, in their motion for rehearing, insist that there was a sale of Russian rubles to plaintiff, and that when defendant refused to issue its check on Petrograd, plaintiff should only be entitled to recover the rubles which defendant

had purchased for him. This contract cannot be separated into two or three parts. Plaintiff wanted to purchase from defendant, 4000 rubles, to be paid by a check on Petrograd. These are concededly the facts in this case. He was to pay for these in installments. He complied with his contract, and defendant refused to do so. Plaintiff, therefore, treated the contract as rescinded on account of its breach by defendant, and sued for money had and received. As stated in the original opinion, defendant does not in any way suggest that this is not a proper remedy.

We have carefully gone over defendant's motion for rehearing, but upon careful consideration we are constrained to hold that this judgment is right under the facts of this case. Therefore the Commissioner recommends that the motion for rehearing be overruled.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. Appellant's motion for rehearing is accordingly overruled. *Allen, P. J., Becker* and *Daues, JJ.,* concur.