# CHARLESTON.

DAVID HUMINSKY *v.* GARY NATIONAL BANK

(No. 6482)

Submitted October 1, 1929. Decided October 8, 1929.

659

*Taylor & Taylor* and *Ira J. Partlow,* for defendant in error.
*Strother, Sale, Curd & St. Clair,* for plaintiff in error.

HATCHER, JUDGE:

On June 18, 1917, the plaintiff paid to the defendant $1,400.00 for which it agreed to place 5,000 rubles in the Russian Asiatic Bank at Moscow, Russia, for the use of the plaintiff's wife, who then resided near Moscow. The plaintiff

claims the defendant failed to do this, and brings this action to recover his money with interest from June 30, 1924. The court gave a peremptory instruction in his favor.

The plaintiff testified that he went to see Mr. Barker, the cashier of the defendant, relative to sending money to Russia and was directed by him to defendant's foreign department with the statement "he fix you up"; that plaintiff then informed the foreign department that he wanted (1) to send 5,000 rubles to a bank in Russia for his wife, (2) to have a bank book given her by the Russian bank ("so when she need some money she can go get some"), and (3) the Russian bank to send him a receipt. He paid the defendant the $1,400.00 and was given the following receipt:

"Received from David Huminsky, at Box 33, Elbert, W. Va.

For remittance to Banque Russo Asiatique Residence, Moscow.

Russian

For 5,000.00 Rubles

(Foreign Currency)

Gary, W. Va., 6/18-1917

GARY NATIONAL BANK
By C. T.

No. 1326

GARY NATIONAL BANK
GARY, W. VA.

Remittance made to all parts of the world. $1400.00''.

The plaintiff further testified that defendant's foreign department promised to return his money if it "no get there", and estimated that it would be two months before the receipt would arrive; that after the two months had passed he went to the bank and was told that Russia was in a state of revolution, that the bank could hear nothing from there, and for him to wait until things quieted down and search would be made for the money; that he agreed to this and from time to time made further inquiry of the bank, and "all the time" was told to wait, and the bank would continue trying to find the money; and that he agreed to give further time until

June, 1924, when the bank definitely informed him the remittance could not be located.

Plaintiff's wife (who came to this country in 1923) testified that she never received the bank book, and that after being advised by her husband that he had sent money to her, inquired many times at the Russian Asiatic Bank at Moscow, but was always told that no money was there for her.

Immediately after entering into the contract with plaintiff, the defendant forwarded $1,165.00 to American Express Company of New York and requested it, according to one of its officials, "to transmit 5,000 rubles for them to the Banque Russo Asiatique, Moscow, where this amount was to be placed to the credit of the party whose name is written in Russian on the blank which accompanied this form". The blank referred to is not in evidence, and what name was written thereon does not appear. A "government receipt" was required by defendant. The significance of this requirement is not apparent as no such receipt was furnished. The Express Company purchased ruble exchange in the open market and placed the same to its credit with its Russian correspondent, the Banque Russo Asiatique at Petrograd. The Express Company had no business connections with the Banque Russo Asiatique at Moscow, though the latter and the bank at Petrograd were branches of the same organization. On June 21, 1917, the Express Company mailed an "advice" to the Petrograd bank directing it to deposit 5,000 rubles in the Russian Asiatic Bank at Moscow in the name of the plaintiff, and to have the Moscow bank send the bank book to Lukija Lukijanowa Guminskaija (plaintiff's wife) at a given address. Sometime thereafter the Petrograd bank notified the Express Company that the 5,000 rubles were charged to its account. On September 11, 1917, the Express Company wrote the defendant that a cable from Petrograd advised that this order had been received and executed. The cable is not in evidence. No charge was made the defendant by the Express Company for its services in this matter.

Counsel stipulate that the Russian Revolution broke out in 1917, Kerensky becoming president of the Russian Republic in March, 1917; that rioting commenced in Russia in July,

1917, and continued until November of that year, when the Kerensky regime was overthrown by the Bolsheviks. No evidence has been obtainable from the Russian banks, as they were nationalized by the Soviet government, which refused to furnish any information regarding this matter.

The clerk of defendant's foreign department who handled the transaction with plaintiff in 1917, was not available as a witness. Mr. Barker testified that no employee of defendant was authorized to guarantee the delivery of money; and that he had no personal knowledge of the transaction with the plaintiff, but understood that the rubles were to be sent to the Moscow bank for the use of plaintiff's wife, which bank was "to advise her it was there".

The defendant plead and relies on the statute of limitations. No definite time was fixed for the performance of this contract; therefore, the law implied a reasonable time. *Roberts* v. *Lumber Co.*, 76 W. Va. 290, 296. What was a reasonable time must "be determined in the light of all the circumstances." *Bratspies* v. *Barrett*, 203 N. Y. Supp. 445. The statute would not run until the expiration of that reasonable time. Here the defendant asked the plaintiff to wait on performance from 1917 to 1924. This request was made and granted because of the abnormal conditions then existing in Russia. The conduct of both parties indicates that they considered the extension of time reasonable under all the circumstances. We see no occasion now for holding otherwise. Therefore, the statute did not commence to run until the termination of the extension period (June 1924). As this action was instituted in 1927, sufficient time had not elapsed to bar plaintiff's right. See also *Schoschet* v. *Bank*, 216 N. Y. Supp. 362.

The defendant contends that in delivering the rubles to the Petrograd bank it complied with its contract, as that bank was a branch of the same organization as the one at Moscow. Petrograd is about 400 miles from Moscow. Therefore, we cannot treat delivery at Petrograd as a substantial compliance with defendant's obligation.

Defendant also contends that the case should have been submitted to the jury. As the evidence for the plaintiff was

undisputed, there was no jury issue. The only question was one of law for the court: did the evidence justify a recovery? The defendant agreed to place the rubles in the Moscow bank for the use of plaintiff's wife, and to have her notified the money was there. Notification was an integral part of the defendant's undertaking. See *Bratspies* v. *Barrett, supra.* Her undisputed testimony shows that she received neither notification nor money. It is not apparent from the record why this was not done; it may be that remittance from Petrograd to Moscow was prevented by the Bolshevists; it may be that the rubles reached Moscow, but through error, either in the order from defendant to the Express Company or in the advice from the Express Company to the Petrograd bank, were deposited in the name of the plaintiff. But the obligation assumed by defendant was an absolute one and not subject to any of the qualifications which we find in most of the cases cited by counsel for defendant, such as agreements to remit in the usual and customary way or subject to certain rules and regulations, or contingent on war or other unusual conditions. Therefore, the defendant is not excused, no matter which cause prevented performance. See *Weiner* v. *Bank,* 214 Mo. App. 691, 13 C. J., p. 639, sec. 712.

But, says the defendant, in order to make his case plaintiff has resorted to parol evidence of the contract, which he may not do, as the receipt is the contract and cannot be thus varied or amplified, citing *Kernov* v. *Goldman,* 229 Mich. 551; *Katcher* v. *Am. Ex. Co.,* 94 N. J. L. 165; 22 C. J., 1138. These authorities forbid the use of oral testimony to vary a receipt only when it is *contractual in form.* The law is otherwise as to a mere receipt such as the one in this case, which does not state the terms of the agreement. *Skuratowicz* v. *Bank,* 234 Mich. 356; *Slivick* v. *Am. Ex. Co.,* (Wis.) 186 N. W. 185; 22 C. J. 1135. It is true that defendant's cashier says that no employee had the right to guarantee the remittance of money. But when the cashier, with knowledge that plaintiff wanted money sent to Russia, directed him to the foreign department with the assurance that it would arrange the matter with him, the department was thereby clothed with the apparent authority to contract freely with the plaintiff.

This case is merely one of simple contract. See the article by Harlan F. Stone in 21 Columbia Law Review, pp. 520, 522. For the anticipated profit of $235.00 on the transaction, defendant assumed the risk of the undertaking. It initiated but did not complete performance. Therefore it must respond to plaintiff in damages for breach of the contract. *Scheibe* v. *Zaro,* 192 N. Y. Supp. 433, 436. The decisions are not entirely harmonious on the measure of damages in such cases. That need trouble us none here, however, as the contract furnishes its own measure of damages, i. e., the return of plaintiff's money in case of non-performance. This case bears an analysis similar in all material respects to that of *Pfotenhauer* v. *Trust Co.,* 188 N. Y. Supp. 464, 465, which the court summarized as follows: ''The facts show an undertaking on the part of the defendant to establish a credit for the plaintiff (in a German bank) within a reasonable time to the extent of the equivalent in German exchange of $750.00. Defendant by reason of war conditions failed to perform, and it is but just that plaintiff should have a return of the consideration with interest.''

The judgment of the circuit court is accordingly affirmed.

*Affirmed.*