CHARLES E. BELL

*v.*

SOUTH PENN NATURAL GAS COMPANY

(No. 10267)

Submitted October 3, 1950. Decided November 21, 1950.

*Harold M. Garrett, A. F. McCue, Fred H. Barnett,* for plaintiff in error.

*Ben Moats, Dorr Casto,* for defendant in error.

HAYMOND, JUDGE:

This is a proceeding by notice of motion for judgment, returnable March 1, 1949, in the Circuit Court of Wood County, in which the plaintiff, Charles E. Bell, seeks to recover from the defendant, South Penn Natural Gas Company, a corporation, for severance pay which the plaintiff, a former employee of the defendant, claims it owes him by virtue of a contract for the benefit of the plaintiff and other employees, entered into between the South Penn Oil Company, a corporation, the defendant, and Employees' Federation Delegates, an organization acting in behalf of the plaintiff and other employees of the defendant, on May 4, 1945. The amount claimed is stated in the notice and, with interest from February 7, 1949, is also specified in an affidavit attached to and filed with the notice. The defendant denied liability to the plaintiff in any sum by its plea of the general issue and its counter affidavit filed with the plea. The case was tried on May 26, 1949, and on that day a jury returned a verdict in favor of the plaintiff for $920.00. The circuit court overruled the motion of the defendant to set aside the verdict and, by order entered December 14, 1949, entered judgment for the amount of the verdict with interest and costs. To that judgment, upon the petition of the defendant, this Court granted this writ of error.

The contract upon which the claim of the plaintiff is based is established by the written minutes of a conference of the contracting parties held at Pittsburgh, Pennsylvania, on May 4, 1945, and in its pertinent portions

provided that the defendant should pay all its employees, who were "laid off or dismissed" from service from January 1, 1945, to April 30, 1945, inclusive, and after April 30, 1945, in West Virginia, until further notice, if such employees had served the defendant "continuously for a period in excess of one year at the time of lay-off or dismissal". The rate of payment was ½ of one month's wages for an employee who had served more than one year but less than five years, and ½ of one month's wages for an employee who had served for five years, and an additional ½ of one month's wages for each year of his service in excess of five years. The contract further provided that no payment should be made to "men" who "quit" or "resigned of their own accord". The contract, as disclosed by the minutes of the conference, which also related to matters other than the subject of severance pay of employees, was introduced in evidence by the plaintiff.

Neither party to this proceeding questions the validity of the contract or that it was entered into for the benefit of those employees of the defendant to whom its provisions apply. The controlling question in controversy between the parties to this litigation is whether the contract applies to the plaintiff. He vigorously contends that it does. The defendant, with equal emphasis, insists that it does not.

It is clear that the material facts in evidence, except those which relate to the termination of the employment of the plaintiff in January, 1949, are not disputed. As to that phase of the case, the plaintiff contends that he was discharged by the defendant and that, for that reason, he is within the terms of the contract and entitled to the payments which it provides. On the contrary, the defendant asserts that the plaintiff was not discharged, that he voluntarily resigned and quit his employment, and that because he voluntarily terminated his employment with the defendant he is not entitled to receive any of the benefits provided by the contract for its employees who are laid off or dismissed. The inquiry whether the evidence which

bears upon the termination of the employment of the plaintiff with the defendant in January, 1949, is actually conflicting and presents a question of fact for the jury or a question of law for the court will be discussed and answered later in this opinion.

The plaintiff is a married man and during the entire period of his employment with the defendant, which began on July 14, 1936, and continued for more than twelve years and until January 31, 1949, his family resided in the City of Parkersburg in Wood County. During the time he worked for the defendant, he was employed as a "roustabout", a word of well known meaning in the oil and gas industry, and his duties ordinarily consisted in "pulling wells", pulling rods, mowing, other similar work, and starting gas engines which, according to the evidence, is a strenuous act or operation. He was employed for no definite period of time and his wages accrued upon a monthly basis. At the time his employment with the defendant ended in January, 1949, his monthly wages, exclusive of a bonus of $30.00 per month, amounted to $230.00, and his family consisted of his wife and a son of high school age. In the years 1947 and 1948 the plaintiff was twice injured in the course of his employment and in each instance he suffered a hernia. During the first six years of his employment he worked at Yawkey, in Lincoln County, and during the remaining period of approximately the same length of time he was stationed at Murphytown, in Wood County. Yawkey is about 110 miles, and Murphytown is 6 or 7 miles, from Parkersburg, where his wife and his son resided.

In September, 1948, after the plaintiff had received operative treatment for hernia and while he was on duty at Murphytown, the vice president and general superintendent of the defendant and its district superintendent called upon the plaintiff and discussed with him the subject of his employment. At that time the plaintiff was told in substance that, because of his physical condition, it was the opinion of these officials that he should not

engage in the work of starting gas engines; that he should seek other employment and engage in work which he was physically able to perform, and which would not require him to start gas engines; that he need not obtain such other employment "in any hurry"; but that he should give thought to the matter. At this meeting the plaintiff requested and received from the district superintendent of the defendant a letter of recommendation which stated that the plaintiff had been an employee of the company for the past twelve years and had a great deal of experience in oil field work "such as drilling, cleaning out, roustabouting and pumping", and that he was "a man of intelligence, good habits, and a good worker". The plaintiff did not seek or obtain other employment but continued to work for the defendant at Murphytown until January 31, 1949. Sometime after the conversation in September, 1948, between the plaintiff and the above mentioned officials of the defendant, its district superintendent created a position for the plaintiff by which he could continue his employment with the defendant at Shirley, 72 miles from Parkersburg, at a slight increase in his monthly wages. In this position the plaintiff would not be required to engage in the work of starting gas engines but it would be necessary for him to use an automobile for transportation purposes in connection with his work. The district superintendent also made arrangements for living quarters for the plaintiff at that place.

On or about Friday, January 21, 1949, the plaintiff was offered this newly created position and requested by the district superintendent of the defendant to transfer his employment with it to that location. He was asked to go to Shirley and investigate the conditions with respect to his employment there but he declined to do so. He requested that he be given until the following Monday to decide whether he would accept the new employment, and at that time he refused it for the reasons that his wife, who had been ill, was unable to live at Shirley; that his son was a student at a high school in Parkersburg; and that the plaintiff could not afford the expense of an

automobile for transportation at the new location. After declining the offered employment at Shirley, the plaintiff requested and received payment of his wages for the month of January, 1949, and since the last day of that month he has not been employed by the defendant. A few weeks after his employment with the defendant ended the plaintiff instituted this proceeding and, at the time of the trial, he was, and had been for five weeks, employed as a crane operator for the United States Army Engineers.

Upon the trial the plaintiff and two other witnesses, one of whom was an employee of the defendant, testified in his behalf. The witnesses offered by the defendant were its vice president and general superintendent, its district superintendent, and its foreman at Murphytown.

With regard to the manner in which the employment of the plaintiff was terminated the plaintiff at first stated that he was discharged, but in giving the details of the transaction he testified repeatedly that he was asked to resign and to try to get another job. He admitted that he was offered and declined employment with the company at Shirley; that he asked for and was paid his wages for the month of January, 1949; and that his employment with the defendant terminated on January 31, 1949. In connection with his testimony that he was discharged he also testified that the district superintendent told him that if he did not take the job at Shirley he "would have no more work". Each of the three witnesses offered in behalf of the defendant, all of whom had authority to discharge the plaintiff, testified positively that he did not discharge the plaintiff. One of them, the district superintendent, also testified that he had created a job for the plaintiff at Shirley which the plaintiff refused to accept; that he told the plaintiff at the time he was paid in January, 1949, that he "was not fired"; that he did not want to discharge the plaintiff and had no intention of discharging him; that he did not try "to get rid of" the plaintiff; and that the plaintiff was not discharged. Though the plaintiff tes-

tified that he was discharged, he also stated that he was asked to resign. It is clear that he was not forced to resign. Instead a new job, at which he was physically able to work and which he was urged to accept, was created for him at a location nearer Parkersburg than the place at which he first worked for the defendant for six years, but which he refused to accept. He then demanded and was paid the wages due him and he immediately ceased to work for the defendant. His statement that he was discharged was a mere conclusion which is not supported, but is in fact refuted, by the established facts, which he did not expressly controvert or deny, that the defendant imposed no limit in time as to his employment, never notified or ordered him to quit or leave his work, and permitted him to fix the time within which he could accept the new job in good faith created for him. The proof introduced by the defendant is clear and positive that the plaintiff was not discharged and that he was so informed before he left his employment; and this evidence was not expressly denied by the plaintiff or by any witness in his behalf. From the foregoing it is obvious that there is no actual conflict as to the material facts which bear upon the way in which the employment of the plaintiff was ended on January 31, 1949, and that he was not laid off or discharged but, in fact, voluntarily quit and left his employment with the defendant.

To reverse the judgment the defendant, in substance, assigns as error the action of the trial court: (1) In giving two instructions offered by the plaintiff; (2) in refusing to give a peremptory instruction offered by the defendant; (3) in refusing to sustain the motion of the defendant to set aside the verdict and grant a new trial because the verdict is without evidence to support it and is contrary to the law and the evidence; and (4) in entering judgment upon the verdict. These assignments of error present the important question whether the plaintiff was laid off or dismissed or voluntarily quit his employment.

Under the law governing the relation of master and

servant, an employment, unaffected by contractual or statutory provisions to the contrary, may be terminated, with or without cause, at the will of either party. 56 C. J. S., Master and Servant, Section 31. An employer has the right to dismiss his employee without cause, though in so doing he subjects himself to liability for damages if the dismissal violates any provision of the contract of employment. 18 R. C. L. 510. When the contract of employment is of indefinite duration it may be terminated at any time by either party. *Adkins* v. *Aetna Life Insurance Company,* 130 W. Va. 362, 43 S. E. 2d 372; *Resener* v. *Watts, Ritter and Company,* 73 W. Va. 342, 80 S. E. 839, 51 L. R. A. (N. S.) 629; *Boatright* v. *Steinite Radio Corporation,* 10 Cir., 46 Fed. 2d 385. "An employment upon a monthly or annual salary, if no definite period is otherwise stated or proved for its continuance, is presumed to be a hiring at will, which either party may at any time determine at his pleasure without liability for breach of contract." Point 1, Syllabus, *Resener* v. *Watts, Ritter and Company,* 73 W. Va. 342, 80 S. E. 839, 51 L. R. A. (N. S.) 629. A contract of employment, for no definite period of time and under which an employee receives a fixed sum for each day, week, month or year of service, according to the weight of authority, is an employment at will and is terminable at any time at the pleasure of the employer or the employee. *Boatright* v. *Steinite Radio Corporation,* 10 Cir., 46 Fed. 2d 385. In the absence of a contractual or valid statutory provision to the contrary, an employer may promote, demote, transfer or change the status of an employee, 56 C. J. S., Master and Servant, Section 28 (58); and it is the duty of an employee to obey all reasonable orders of the employer which are not inconsistent with the provisions of the contract of employment. *Jerome* v. *Queen City Cycle Company,* 163 N. Y. 351, 57 N. E. 485. Under these authorities, the employment of the plaintiff with the defendant, being of indefinite duration and at wages payable on a monthly basis, was an employment at will and was terminable at the pleasure of the plaintiff or the defendant. The plaintiff had the right to quit, and the defendant had

the right to discharge him, at any time. The defendant also had the right to transfer the plaintiff to the position which it provided for him at Shirley. Of course the plaintiff had the right to refuse to accept employment at that place and to terminate, as he did, his employment with the defendant; but if he wished to continue his service with the defendant, it was his duty to accept the offer of the defendant to transfer him to the job at Shirley.

As indicated earlier in this opinion, the undisputed evidence is that the plaintiff declined the offered employment at Shirley, requested and received the wages due him, and voluntarily quit his employment on January 31, 1949. "When the facts are not in dispute and they lead all reasonable minds to the same conclusion, the question in issue becomes one of law for the court." *Adkins* v. *Aetna Life Insurance Company,* 130 W. Va. 362, 43 S. E. 2d 372. See also *Huminsky* v. *Gary National Bank,* 107 W. Va. 658, 150 S. E. 9; *Douglas* v. *Metropolitan Life Insurance Company,* Mo. App., 297 S. W. 87; 64 C. J., pages 338 to 341; 53 Am. Jur., Trial, Section 157. The circuit court should have given the peremptory instruction requested by the defendant and should not have submitted to the jury the question of the manner in which the employment of the plaintiff was terminated. The plaintiff, under the contract on which his claim is based, is not entitled to recover any sum from the defendant in this proceeding; and the action of the circuit court, in refusing to give the requested peremptory instruction and in submitting to the jury the question of the manner of the termination of the employment of the plaintiff, constituted reversible error.

For the reasons stated, the judgment is reversed, the verdict is set aside, and a new trial is awarded the defendant.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*