**Raoul Eddie LILLY, Plaintiff–Appellant,**

v.

**OVERNITE TRANSPORTATION COMPANY, a Virginia corporation, doing business in the State of West Virginia, Defendant–Appellee.**

No. 91–2059.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1991.

Decided June 9, 1993.

Jerome J. McFadden, Gibson, McFadden & Ash, Princeton, WV, argued, for plaintiff-appellant.

Michael Vance Matthews, Blakeney, Alexander & Machen, Charlotte, NC, argued (W.T. Cranfill, Jr., Blakeney, Alexander & Machen, Charlotte, NC, Wayne L. Evans, Katz, Kantor & Perkins, Bluefield, WV, on brief), for defendant-appellee.

Before NIEMEYER, Circuit Judge, and BUTZNER and SPROUSE, Senior Circuit Judges.

## OPINION

SPROUSE, Senior Circuit Judge:

Raoul Eddie Lilly appeals from the district court's summary judgment order in favor of Overnite Transportation Company on Lilly's claims against it for wrongful discharge and breach of contract. We affirm on the breach of contract claim but, based on the answer of the West Virginia Supreme Court of Appeals to our certified question, we reverse the summary judgment on Lilly's claim for wrongful discharge.

## I

Lilly filed his original complaint in the circuit court of Mercer County, West Virginia, in June 1989. Shortly thereafter, Overnite removed the action to the United States District Court for the Southern District of West Virginia based on diversity jurisdiction. Lilly's amended complaint alleged wrongful discharge, breach of contract, negligent administration of employment procedures, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress. On Overnite's motion, the district court granted summary judgment against Lilly on all his claims.

Lilly appealed only his claims for breach of contract and wrongful discharge. After argument before this panel, we were of the opinion that the district court had correctly granted summary judgment on the breach of contract claim. As for the wrongful discharge claim, however, we issued an order of certification because we believed that the claim concerned West Virginia's substantive law on public policy and that the state supreme court had not addressed that issue as it related to the facts of this case. The West Virginia Supreme Court of Appeals has now responded to our certified question. *Lilly v. Overnight Transp. Co.*, 425 S.E.2d 214 (W.Va.1992). Based on its answer, we reverse the judgment of the district court and remand for trial on the factual issues relating to whether Lilly was wrongfully discharged.

## II

We, of course, review the district court's summary judgment order de novo. *Moore v. Winebrenner*, 927 F.2d 1312, 1313 (4th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). Summary judgment is appropriate if no issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* We draw any inferences in the light most favorable to the nonmoving party. *Id.* So construed, the facts are as follows. Lilly was employed by Overnite as a truck driver from November

17, 1972 until November 2, 1988. On August 14, 1988, he was instructed to transport a load of veneer lumber from Bluefield, West Virginia, to Norfolk, Virginia, where the lumber was to be loaded onto a cargo ship and transported overseas. While testing the brakes on the trailer containing the cargo, however, Lilly discovered that they were defective. After an unsuccessful repair attempt by an Overnite mechanic, Lilly decided not to take the lumber to Norfolk because the trailer was unsafe.

Lilly tried to telephone his supervisor, Dennis Cole, but was unable to reach him. He ultimately contacted another Overnite manager in South Carolina, who agreed that the truck should not leave the lot. Because of Lilly's failure to take the lumber to Norfolk, the cargo ship left without it. When Cole learned that Lilly had not delivered the lumber, he became angry. Lilly claims the incident "caused trouble" for Cole at Overnite, and that Lilly's relationship with Cole soured as a result of the incident.

On November 2, 1988, when Lilly was driving his truck on Interstate 77, Overnite safety supervisor Donald Cole, the brother of Dennis Cole, used a radar gun to clock Lilly's speed at 70 to 71 miles per hour. Donald Cole then contacted Lilly by citizens band radio and ordered him to pull off the road at the next safe exit. After Lilly exited, Donald Cole told him that he had been speeding and fired him.

Lilly claims that at the time he was fired, his speedometer was not operating properly. Three days before his discharge, on October 30, 1988, he had filed a written report with Overnite stating that his speedometer was giving false readings. The speedometer in his truck was attached to a recording device that charted the speedometer's readings. At the time of the speeding, the chart indicated that Lilly's speedometer read 68 miles per hour. Overnite's written policy on speeding violations provided that any driver operating a truck at 70 or more miles per hour would be fired; a driver going over 60 but under 70 miles per hour would not be fired if it was his only offense within the past twelve months. Lilly alleged that he had no previously recorded speeding violations.

## III

We first address the breach of contract claim.* West Virginia law, absent specific term provisions, presumes at-will employment. *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459, 468 (1955); *Bell v. South Penn Natural Gas Co.*, 135 W.Va. 25, 62 S.E.2d 285, 288 (1950). However, in *Cook v. Heck's, Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986), the West Virginia Supreme Court of Appeals established an exception where the employer has furnished the employee with a complete list of specific reasons for discharge. Such circumstances constitute *"prima facie* evidence of an offer for a unilateral contract of employment modifying the right of the employer to discharge without cause." *Id.* 342 S.E.2d at 459. Lilly attempts to bring himself within that exception, contending that Overnite's employment handbook created such a unilateral contract. The district court correctly found, however, that the facts of this case do not fall within the *Cook* exception. The handbook listed "examples of misconduct which will not be tolerated," but Lilly made no showing that the list was intended to be exclusive. Additionally, the handbook contained the following language:

> Nothing contained in this handbook or any other handbook, manual, paper writing or other communication between the Company and employee shall be construed as creating an express or implied contract of employment for a definite or indefinite term. All persons hired as part-time, probationary, full-time or regular employees shall have the right at any time to terminate their employment with the Company. The Company shall have a comparable right at all times to terminate employment of employees for any reason that does not contravene applicable state or federal law.
>
> The Company reserves the right at all times to alter, amend, add to, or revoke

---

\* Our Order of Certification stated, without elaboration, that we had determined the district court's holding on the breach of contract claim to be correct. We now incorporate our reasoning.

any provision of this handbook on Safety and Operating Rules and Regulations, as well any other handbook or manual it gives to employees.

The West Virginia Supreme Court of Appeals has ruled that such disclaimer language completely precludes any viable claim for breach of contract. *Reed v. Sears, Roebuck & Co.*, 426 S.E.2d 539, 544–45 (W.Va.1992); *Suter v. Harsco Corp.*, 184 W.Va. 734, 403 S.E.2d 751, 754–55 (1991). The district court's grant of summary judgment to Overnite on Lilly's breach of contract claim is therefore affirmed.

## IV

■ A consequence resulting from West Virginia's presumption of at-will employment, of course, is that an employee normally may be discharged at the will of the employer. *Suter,* 403 S.E.2d at 754; *Wright,* 90 S.E.2d at 468; *Bell,* 62 S.E.2d at 288. However, the state supreme court has stated:

[T]he rule giving the employer the absolute right to discharge an at will employee must be tempered by the ... principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge.

*Harless v. First Nat'l Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270, 275 (1978). Relying on the *Harless* public policy exception, Lilly contends that Overnite's proffered reasons for discharging him were pretextual. He asserts that Overnite discharged him in retaliation for his refusal to drive a truck with defective brakes loaded with lumber from Bluefield, West Virginia, to Norfolk, Virginia. He argues that the discharge violated the public policy of West Virginia, as evinced by W.Va.Code § 17C–15–1(a) (prohibiting the driving of any vehicle "which is in such unsafe condition as to endanger any person"), § 17C–15–31 (providing brake equipment requirements), § 24A–5–5(j) (authorizing state Public Service Commission to promulgate safety regulations for motor vehicles), and 10 W.Va.C.S.R. § 150–9–2.3 (specifying brake performance requirements).

Before we certified the question to the West Virginia Supreme Court of Appeals, Overnite had contended that West Virginia had no public policy against driving vehicles with inadequate brakes. The district court had granted summary judgment on the wrongful discharge claim because "West Virginia courts have yet to recognize a wrongful discharge cause of action under ... West Virginia Code § 17C–15–1 or West Virginia Code § 17C–15–31." In responding to our certified question, however, the West Virginia Supreme Court of Appeals concluded that

the legislature intended to establish a clear and unequivocal public policy that the public should be protected against the substantial danger created by the operation of a vehicle in such an unsafe condition as to endanger the public's safety. Thus, we hold that a cause of action for wrongful discharge may exist under West Virginia Code § 17C–15–1(a), § 17C–15–31 and § 24A–5–5(j), where an employee is discharged from employment in retaliation for refusing to operate a motor vehicle with brakes that are in such an unsafe working condition that operation of the vehicle would create a substantial danger to the safety of the public. Whether the nature of the unsafe condition of a vehicle is sufficient to create a substantial danger to the safety of the public is a factual determination. Clearly, however, where such substantial danger is created, the Appellant's discharge from employment for refusing to operate such a vehicle would certainly thwart a substantial public policy.

*Lilly,* 425 S.E.2d at 217 (footnote omitted).

In view of the above, the summary judgment of the district court on the wrongful discharge claim is reversed and remanded for a trial on the factual issues raised in that claim.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.